IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

RECEIVED

|  |  |  |
|---|---|---|
| DONTE TONEY, | ) | |
| | ) | 2007 JAN 25 P 3: 00 |
| Plaintiff, | ) | |
| | ) | DEBRA P. HACKETT, CLK |
| v. | ) | U.S. DISTRICT COURT |
| | ) | MIDDLE DISTRICT ALA |
| DAIMLERCHRYSLER CORPORATION, | ) | CIVIL ACTION NO. |
| a corporation, CHIP ELLIS CARS | ) | |
| AMERICA INCORPORATED, a | ) | 3:07CV73-MEF |
| corporation, CHIP ELLIS, INC., a | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | | |

## NOTICE OF REMOVAL

Petitioner DaimlerChrysler Corporation ("DCC"), formerly Chrysler Corporation, defendant in the above-styled action, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442(a)(1), and 1446, with full reservation of any and all defenses, including, but not limited to lack of personal jurisdiction and improper service, files this Notice of Removal of the foregoing cause to the United States District Court for the Middle District of Alabama, Eastern Division. As grounds which entitle it to removal, petitioner respectfully represents the following:

## I.    THIS NOTICE OF REMOVAL IS TIMELY AND PROPERLY FILED.

1.    Plaintiff instituted the above-styled action in the Circuit Court of Macon County, Alabama, against DCC. Plaintiff also named as defendants Chip Ellis Cars America Incorporated and Chip Ellis, Inc. (collectively referred to as "Chip Ellis Cars"). The complaint seeks unspecified damages from the defendants under six theories of liability: 1) the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); 2) breach of warranty; 3) negligence; 4) wantonness; 5) negligent failure to warn; and 6) wanton failure to warn. Said suit was filed on

or about December 11, 2006, and bears case number CV-06-244 in the Circuit Court of Macon County, Alabama.

2.    Petitioner DCC was served with plaintiff's summons and complaint on December 26, 2006.  Based on information and belief, defendants Chip Ellis Cars America Incorporated and Chip Ellis, Inc. have not been served.  Petitioner hereby reserves any and all rights to assert as defenses to plaintiff's complaint the insufficiency of service of process or insufficiency of process.

3.    This is a civil action within the meaning of the Acts of Congress relating to the removal of causes.

4.    The first receipt by any of the defendants of the summons or complaint, by service or otherwise, occurred less than thirty days before the filing of this Notice of Removal. Therefore, pursuant to 28 U.S.C. §1446(b), this Notice of Removal is timely filed.

5.    The time in which defendants are required by state law or rules of court to answer or plead to the complaint has not expired.

6.    A true and correct copy of all process, pleadings, and orders served upon the defendants, as well as papers or exhibits of every kind on file with respect to this action in the state court, is attached hereto as Exhibit A.

7.    Although this case was filed in state court, federal jurisdiction is proper for two separate and distinct reasons: 1) DCC is entitled to remove this case under 28 U.S.C. § 1442(a)(1), commonly referred to as "federal officer removal"; and 2) the true parties to this action are plaintiff and DCC, and the Chip Ellis entities have been fraudulently joined to defeat diversity jurisdiction.

## II.  **FEDERAL OFFICER REMOVAL IS PROPER IN THIS CASE.**

Petitioner DCC removed this case to the District Court under 28 U.S.C. § 1442(a)(1),

which provides in relevant part:

> (a) A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

> (1)  ...any officer (or person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

8.  This action arises out of an automobile accident involving a 2000 Chrysler Cirrus.

Plaintiff's claims for negligent and wanton failure to warn stem from the allegedly defective

design of the roof of the 2000 Chrysler Cirrus.  Specifically, Plaintiff contends that DCC is liable

for negligently and wantonly failing to warn him that the defective roof design would lead to

roof crush in the event of a rollover.

9.  The Eleventh Circuit has stated that proper removal under section 1442(a)(1)

requires the satisfaction of two separate requirements.  First, the defendant must advance "a

colorable defense arising out of [his] duty to enforce federal law."  Magnin v. Teledyne

Continental Motors, 91 F.3d 1424 (11th Cir. 1996).  Second, the defendant must establish that

there is "a causal connection between what the officer has done under asserted official authority"

and the action against him.  Id.; Maryland v. Soper, 270 U.S. 9 (1926).

10.  The United States District Court has jurisdiction over this case because DCC

qualifies as a "person acting under [an officer] of the United States or any agency thereof [and

was] sued ... for [acts] under color of such office...."  See 28 U.S.C. § 1442(a)(1).

3

11.   DCC will assert, and has at least a colorable basis for asserting, federal defenses. Federal officer removal of this case is appropriate pursuant to 28 U.S.C. §1442(a)(1) because the plaintiff's claims of wanton failure to warn directly implicate DCC's responsibilities under federal law, namely 49 CFR §571.216.[1]  Therefore, substantial questions of federal law will be at issue in this case.  Removal of this civil action is proper under 28 U.S.C. §§ 1441, 1442, and 1446 because the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States and because DCC is a person acting under an officer of the United States or an agency thereof and is being sued for acts performed under color of office of such officer.

12.   "[A] federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues...." Grable & Sons Metal Prods. V. Darue Eng'g & Mfg., No 04-603, 2005 U.S. LEXIS 4659 (U.S. June 13, 2005).

**A.   DCC Acted Under An Officer of the United States.**

13.   Removal of this civil action is proper under 28 U.S.C. § 1442 because DCC is a person[2] acting under an officer of the United States or an agency thereof and is being sued for

---

[1] As discussed below, this regulation relates to the federal requirements for design performance and testing of a vehicle's roof structural integrity, which is the only defect alleged in plaintiff's Complaint.  However, there are other federal motor vehicle safety standards relating to other aspects of the subject vehicle to which the following arguments equally apply.

[2] Although some courts have held that a corporation is not a "person" within the meaning of 1442, the weight of authority holds that corporations are persons for purposes of federal officer removal.  See, e.g., Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 398 (5th Cir. 1998); Camacho v. Autoridad de Telefonos de Puerto Rico, 868 F.2d 482, 486-87 (1st Cir. 1989); Davidson v. Arch Chems. Specialty Prods., Inc., 347 F.Supp.2d 938, 941 (D. Or. 2004); Jones v. Three Rivers Elec. Coop., 166 F.R.D. 413, 414 (E.D. Mo. 1996); Good v. Armstrong World Indus., Inc., 914 F.Supp. 1125, 1127-28 (E.D. Pa. 1996).

4

acts performed under color of such officer. Unlike other bases for removal, federal officer removal does not require that the grounds appear on the face of a well-pleaded complaint. Rather, "the federal question element is met if the <u>defense</u> depends on federal law." <u>Jefferson County v. Acker</u>, 527 U.S. 423, 431 (1999) (emphasis added).

14. Automotive safety is federally-regulated pursuant to 49 U.S.C. §30101, commonly referred to as the Safety Act. The Safety Act requires the Secretary of Transportation to proscribe motor vehicle safety standards that are practicable, meet the need for motor vehicle safety, and are stated in objective terms. <u>See</u> 49 U.S.C. §30101. Pursuant to these directives, the National Highway Transportation Safety Authority ("NHTSA") promulgated FMVSS 216 (49 CFR §571.216). FMVSS 216 establishes the strength requirements for the roofs of passenger cars like the Chrysler Cirrus. Its stated purpose is to reduce deaths and injuries due to the crushing of the roof into the occupant compartment in rollover crashes.

15. In order to pass FMVSS 216, a vehicle's roof must meet certain load requirements. According to FMVSS 216, when a force of 1.5 times the vehicle's weight is applied, the roof must not deform more than 5 inches. If the roof deforms 5 inches or less under this load, the vehicle passes FMVSS 216 and may be sold to the public.

16. In addition, FMVSS 216 establishes a testing methodology for "roof crush resistance." <u>Gass v. NSK Ltd.</u>, 2002 WL 31546998 (Cal. App. 2 Dist. 2002). It specifically mandates all aspects of the testing procedures, including the characteristics of the test device to be used, the condition and positioning of the vehicle for the test, and the manner for applying force. For example, FMVSS 216 requires that the test be run by orienting a steel platen above the vehicle. It further commends the specific point at which the platen is to contact the vehicle: the

5

intersection of the A-pillar and the windshield. The same regulations also establish the angles to be observed at the intersection: a 25 degree roll angle and 5 degree pitch angle.

17.     In implementing the roof design for the 2000 Chrysler Cirrus, DCC followed every aspect of the testing directions contained in FMVSS. Moreover, it was on the basis of those tests that DCC determined that the roof design of 2000 Chrysler Cirrus was safe and thus, there was no need to warn of the danger complained of by plaintiff.

### B.    DCC Has a Plausible Federal Defense.

18.     Eleventh Circuit precedent requires that the defendant assert a "colorable federal defense arising out of his duty to enforce federal law" in order to remove pursuant to 28 U.S.C. §1442. Magnin, 91 F.3d at 1427. That court has stated that "the defense need only be plausible; its ultimate validity is not to be determined at the time of removal." Id. at 1427 (quoting Willingham v. Morgan, 395 U.S. 402, 406 (1969). See also McMahon v. Presidential Airways, Inc., 410 F.Supp.2d 1189 (M.D. Fla. 2006)("It is important to bear in mind that at this stage of the litigation, there is no need to decide whether defendants will prevail on [any] of these defenses. The only issue is whether one or [more] of these defenses is colorable."); Jefferson County, Ala. v. Acker, 527 U.S. 423 (1999)("In construing the colorable federal defense requirement, we have rejected a 'narrow, grudging interpretation' of the statute…[and] do not require the officer virtually 'to win his case before he can have it removed.'"); Colorado v. Symes, 286 U.S. 510 (1932)(where a defendant seeks removal pursuant to the federal officer removal statute, "no determination of fact is required but it must fairly appear from the showing made that [the defendant's removal] claim is not without foundation and is made in good faith."); Reed v. Fina Oil & Chem. Co., 995 F.Supp. 705 (E.D. Tex. 1998)("For the initial jurisdictional question, it is not necessary that the defendant prove that the defense is valid. Any determination as to the merits [of the defense] is collateral to the jurisdictional question here presented.").

19.   DCC has a "colorable federal defense" to plaintiff's claim of wanton failure to warn.  In connection with the testing which accompanied the roof design of the 2000 Chrysler Cirrus, DCC acted in precise conformity with the NHTSA's detailed mandates.  Moreover, DCC selected the Chrysler Cirrus roof design as a safe option on the basis of its performance during the rigors of the testing mandated by NHTSA.   A manufacturer cannot be viewed to have wantonly failed to warn of defects in a system which it subjected to federal testing and implemented because it complied with those tests.  See Richards v. Michelin Tire Corp., 21 F.3d 1048, 1059 (11th Cir. 1994); Miles v. Ford Motor Co., 922 S.W.2d 572, 590 n.7 (Tex. Appl. - Texarkana 1996)("When a seller relies in good faith on the current state of the art in safety concerns, and on conclusions by the governmental agencies charged with administering safety regulations in the area of its product that the product is not unreasonably dangerous, it cannot be said to have acted with an entire want of care showing conscious indifference to the safety of the product users...[or to] an extreme degree of risk.").

20.   Moreover, the FMVSS standards do require certain warnings, in addition to its testing criteria, for some aspects of the vehicle (for example, the air bag warnings).  However, there is no required warning for the roof strength standard.  Further, NHTSA delegates FMVSS testing and certification responsibility to the manufacturer.  In Magnin v. Teledyne Continental Motors, 91 F.3d 1424 (11th Cir. 1996), the Eleventh Circuit focused on the fact that the defendant employee was acting under a specific grant of power from the FAA to perform the inspections required under federal statute and to certify compliance.  A similar situation exists here, as the National Highway Transportation Agency delegates the responsibility for testing and certification that vehicles meet the FMVSS to manufacturers, such as DCC in this case.

7

C.    **A Causal Connection Exists Between What DCC Has Done Under Asserted Official Authority.**

21.    Finally, a causal connection exists between DCC's reliance on FMVSS 216 and plaintiff's wanton failure to warn claim. As discussed above, DCC carefully subjected the design option for the roof of the 2000 Chrysler Cirrus to the test procedures set forth in FMVSS 216. In other words, DCC relied upon FMVSS 216 and its test procedures to certify the roof design as "safe" and place the 2000 Chrysler Cirrus into the stream of commerce without a warning that the roof design system was defective. It is precisely that conduct which plaintiff now alleges constitutes a wanton failure to warn. DCC failed to warn of any defect in its design system because the roof's compliance with FMVSS 216 indicated that none was necessary. Accordingly, a causal connection exists between FMVSS 216 and the wanton failure to warn claim against DCC. See Jefferson County, Alabama v. Acker, 527 U.S. 423 (1999)("Just as requiring a 'clearly sustainable defense' rather than a colorable defense would defeat the purpose of the removal statute, so would demanding an airtight case on the merits in order to show the required causal connection.").

D.    **Section 1442(a)(1) Is To Be Given A Broader Reading Than Other Federal Removal Statutes.**

22.    Unlike other removal statutes, which are to be "strictly construed" and for which "doubts [are] resolved in favor of remand," federal officer removal is more generously viewed. Congress passed the federal officer removal statute to protect the federal government from South Carolina's attempt to nullify federal tariff laws in the 1830's. See Gay v. Ruff, 292 U.S. 25 (1934). The Supreme Court has mandated a generous interpretation ever since: "It scarcely need be said that such measures are to be liberally construed to give full effect to the purposes for which they were enacted." Colorado v. Symes, 286 U.S. 510 (1932). The Supreme Court "has held that the right of removal is absolute for conduct performed under color of federal office, and

8

has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of §1442(a)(1).'"    Arizona v. Manypenny, 451 U.S. 232 (1981)(quoting Willingham v. Morgan, 395 U.S. 402 (1969)).

23.    Accordingly, courts considering federal officer removal note the generous reading to be given to the statute. See Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1251 (9th Cir. 2006)("removal rights under section 1442 are much broader than those under section 1441"); McMahon v. Presidential Airways, Inc., 410 F.Supp.2d 1189, 1195 (M.D. Fla. 2006)("while removal provisions are usually construed narrowly...the federal officer provision...is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law"); Reed v. Fina Oil & Chem. Co., 995 F.Supp. 705 (E.D. Tex. 1998)("when jurisdiction is predicated on §1442, a more liberal interpretation of the removal statute is to be entertained in order to effectuate the purposes of §1442").

**E.    DCC Has Met All of the Requirements for Federal Officer Removal, therefore, the Right to Removal Is Absolute.**

24.    Section 1442(a)(1) is an exception to the well pleaded complaint rule. Jefferson County v. Acker, 527 U.S. 423, 431-32 (1999). It permits federal law under which the action is deemed to "arise" for the purposes of the court's Article III jurisdiction to be supplied by pleading a federal defense in the notice of removal and satisfying the provision's other requirements. Id.; see also Mesa v. California, 489 U.S. 121 (1989). See also 14C Wright, Miller, Cooper & Steinman, Federal Practice and Procedure §3727 (stating that federal officer removal "operates on the basis of issues generally thought to be defensive in character rather than on the content of the plaintiff's claim"); Ryan v. Dow Chem. Co., 781 F.Supp. 934, 939 (E.D.N.Y. 1992)(noting that a defendant who is able to meet the requirements for removal under

section 1442 "gain[s] access to federal court [even] where no federal question is presented by the plaintiff").

25.     If Section 1442's statutory prerequisites are satisfied, §1442 provides an independent federal jurisdictional basis. <u>Magnin v. Teledyne Continental Motors</u>, 91 F.3d 1424 (11th Cir. 1996).  In other words, a case can be removed to federal court pursuant to the federal officer removal statute even if the plaintiff could not have filed it there in the first place. <u>Durham v. Lockheed Martin Corp.</u>, 445 F.3d 1247 (9th Cir. 2006).

26.     Federal officer removal also allows for removal of the <u>whole</u> controversy, not just the federal parts.  Moreover, "it is not of any objection that questions are involved which are not all of a Federal character."  <u>Mesa v. California</u>, 489 U.S. 121, 129 (1989)("If one question of a federal character exists, if there be a single such ingredient in the mass, it is sufficient.  That element is decisive upon the subject of jurisdiction.")

27.     In addition, whereas all defendants must consent to removal under section 1441, a federal officer or agency defendant can unilaterally remove a case under section 1442.  <u>Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co.</u>, 644 F.2d 1310, 1315 (9th Cir. 1981).  For these reasons, federal officer removal in this case is appropriate.

## III.     ALTERNATIVELY, DEFENDANTS CHIP ELLIS CARS AMERICA, INC. AND CHIP ELLIS, INC. ARE FRADULENTLY JOINED AND THE ONLY TRUE PARTIES TO THIS ACTION ARE OF DIVERSE CITIZENSHIP.

28.     The complaint alleges that the plaintiff is a citizen of the State of Alabama. Complaint, ¶ 1.

29.     Defendant DCC is now and was at the time of the filing of plaintiff's complaint, and all times intervening, a Michigan corporation with its principal place of business in Michigan.

30.    Chip Ellis Cars America, Incorporated and Chip Ellis, Inc. are alleged to be Alabama corporations. Complaint, ¶¶ 3 & 4. There is no possibility, however, that plaintiff can establish any cause of action against Chip Ellis Cars America, Incorporated and Chip Ellis, Inc. See Exhibit B.   Consequently, the joinder in this action of these defendants alleged to be Alabama citizens is a fraudulent joinder of resident parties as the term "fraudulent joinder" has been defined by federal courts, and does not prevent the removal of this action to this Court.

31.    The complaint also purports to state claims against unnamed, fictitious defendants identified as fictitious defendants 1 through 32.  For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441(a).

32.    Thus, the real controversy in this civil action is wholly between citizens of different states: plaintiff, a citizen of the State of Alabama, and DCC, a citizen of a state other than Alabama. The controversy between the parties can be fully determined in this case. Petitioner knows of no change in the citizenship of these parties that has occurred since the commencement of this suit.

33.    The Eleventh Circuit has recognized that a defendant has been fraudulently joined if there is no possibility that the plaintiff can prove any cause of action against the resident defendant under prevailing state law.  Cabalecta v. Standard Fruit Co., 883 F.2d 1553, 1556 (11th Cir. 1989); Insigna v. LaBella, 845 F.2d 249, 254 (11th Cir. 1989).  The determination of whether the resident defendant has been fraudulently joined is made based upon the plaintiff's pleadings at the time of removal. Id.; see  also Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S.Ct. 347, 349, 83 L.Ed 334 (1939).  The district court can consider submitted affidavits, deposition transcripts and other evidence to determine whether fraudulent joinder has occurred. Coker v. Amoco Oil Co., 709 F.2d 1433, 1440 (11th Cir.1983).

11

A.    **Plaintiff's Non-AEMLD Claims Fail.**

    **1. Plaintiff's Negligence/Wantonness and Negligent/Wanton Failure to Warn Claims Fail.**

34.    Chip Ellis Cars America Incorporated and Chip Ellis, Inc. (collectively referred to as "Chip Ellis Cars") did not sell the subject vehicle to plaintiff. See Exhibit B, Affidavit, ¶¶ 4, 11. Further, Chip Ellis Cars had no dealings with plaintiff with respect to the subject vehicle. Id. Accordingly, Chip Ellis Cars had no relationship with plaintiff.

35.    Plaintiff has asserted claims against Chip Ellis Cars under theories of negligence and wantonness. However, there "must be a duty owing from the defendant to the plaintiff to successfully prove the negligence or wantonness of action." Alabama Power Co. v. Laney, 428 So.2d 21, 22 (Ala. 1983). Whether a legal duty exists is a question of law for the Court to decide. Patrick v. Union State Bank, 681 So.2d 1364, 1368 (Ala. 1996). A critical factor in determining the existence of a duty is the relationship of the parties. Where there is no relationship, there is no duty. Morris v. Merritt Oil Co., 686 So.2d 1139, 1142 (Ala. 1996) (upholding summary judgment for defendant where "[plaintiff] presented no evidence of a relationship between herself and [defendant] that would support a finding that [defendant] owed a duty to [plaintiff]").

36.    Chip Ellis Cars had no relationship with plaintiff. Accordingly, it had no duty to support a claim against it for negligence or wantonness. This complete lack of contact between Chip Ellis Cars and plaintiff is also fatal to plaintiff's negligent/wanton failure to warn claim. "For one to have a duty to warn, . . . one must have a reasonable opportunity to warn." Finley v. Patterson, 705 So.2d 826, 829 (Ala. 1997). Because Chip Ellis Cars had no dealings with Toney, it had no duty or reasonable opportunity to warn. Accordingly, plaintiff's

12

negligence/wantonness and negligent/wanton failure to warn claims fail as a matter of law, and Chip Ellis Cars is fraudulently joined.

**2. Plaintiff has no viable Breach of Warranty claim against Chip Ellis Cars.**

37.    As a threshold matter, because plaintiff had no dealings with Chip Ellis Cars, Chip Ellis Cars provided no warranties to plaintiff. See Exhibit B, Affidavit, ¶¶ 4, 12.  Additionally, Chip Ellis expressly excluded all warranties at the time it sold the vehicle. See Attachment 1 to Exhibit B, Affidavit.    Furthermore, Alabama law is well-settled that as to warranties of merchantability and fitness for a particular purpose, the only implied warranties recognized in Alabama, are not implied in the sale of used vehicles. See Roland v. Cooper, 768 So.2d 400, 406 (Ala. Civ. App. 2000), citing Osborn v. Custom Truck Sales & Service, 562 So.2d 243 (Ala. 1990). Finally, even if Chip Ellis Cars did provide a warranty to plaintiff, which it did not, it is clear that plaintiff provided no notice of the alleged breach of warranty to Chip Ellis Cars because he had no dealings with Chip Ellis Cars.  In Alabama, the law is clear that in order to maintain a proceeding for breach of warranty, a plaintiff must first give notice to the alleged warrantor. Parker v. Bell Ford, Inc. , 475 So.2d 1101 (Ala. 1983).  Plaintiff gave no such notice to Chip Ellis Cars, and the breach of warranty claims against Chip Ellis Cars fail as a matter of law.   Accordingly, Chip Ellis Cars America, Incorporated and Chip Ellis, Inc. have been fraudulently joined.

**B.    Plaintiff has no viable AEMLD claim against Chip Ellis Cars.**

38.    Although there is no privity requirement in an AEMLD claim, the AEMLD is a fault-based doctrine.  Under Alabama law, plaintiff cannot prove a cause of action under the AEMLD against Chip Ellis Cars who is merely the seller of the used, finished, unaltered vehicle and did not contribute to cause the alleged defective condition. See Johnson v. General Motors Corp. , 82 F.Supp.2d 1326 (S.D.Ala. 1997).

13

39.    A seller or distributor has no liability under the AEMLD when its activities have "no causal relation" to the alleged defect in the product. Townsend v. General Motors Corp., 642 So. 2d 411, 424 (Ala. 1994); Fleming Farms v. Dixie Ag Supply, Inc., 631 So. 2d 922, 927-28 (Ala. 1994); Atkins v. American Motors Corp., 335 So. 2d 134, 143 (Ala. 1976). No causal relation exists where sellers or distributors were merely in the business of selling a product, received the product in the allegedly defective condition, did not contribute to the alleged defect, and had neither knowledge of the alleged defect nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer. Johnson, *supra* at 1327-29 (finding plaintiff had not put forth any evidence beyond "pure supposition" that the local dealer had any knowledge of the alleged defects); Townsend, 642 So. 2d at 424-25; Fleming Farms, 631 So. 2d at 927-28; Atkins, 335 So. 2d at 143. Further, where an alleged defect is latent and therefore not discoverable by a "reasonable inspection," a seller, as a matter of law, does not have a superior opportunity to discover it. Fleming Farms, 631 So. 2d at 928; Consolidated Pipe & Supply Co. v. Stockham Valves & Fittings, Inc., 365 So. 2d 968, 971 (Ala. 1978).

40.    Chip Ellis Cars merely sold a used 2000 Chrysler Cirrus manufactured by others to individuals other than plaintiff. The complaint does not sufficiently allege that Chip Ellis Cars did anything to contribute to the alleged defects or that Chip Ellis Cars participated in the design or production of the vehicle. Indeed, under either Alabama Rule of Civil Procedure 11 or its federal counterpart, neither plaintiff nor his counsel could legitimately assert such a totally unfounded allegation against this used car lot. See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 & n. 5 (indicating that, in the context of a motion to remand, both a Rule 11 standard and ethical considerations apply to counsels' representations about jurisdictional matters).

41.   In contrast to plaintiff's failure to put forth evidence that Chip Ellis Cars had any knowledge of the alleged defect, defendant attaches the affidavit of Chip Ellis Rep. See Exhibit B.  This testimony clearly establishes that Chip Ellis Cars had no causal relationship to the alleged defective nature of the vehicle. To the contrary, Chip Ellis Cars simply sold a used, unaltered, finished vehicle which Chip Ellis Cars did not manufacture or design; any alleged defect in the subject vehicle existed at the time Chip Ellis Cars received the vehicle; Chip Ellis Cars did not alter the subject vehicle so as to contribute to the allegedly defective condition; and Chip Ellis Cars had no knowledge of the alleged defect nor any opportunity to inspect the vehicle which was superior to the opportunity of the purchaser. See Exhibit B.  Because the complaint fails to allege a single fact that would preclude Chip Ellis Cars from proving a  "lack of causal relation" defense, the plaintiff cannot make an AEMLD claim against Chip Ellis Cars, and Chip Ellis Cars has been fraudulently joined. See, e.g.,  Johnson, 82 F.Supp.2d at 1330; Brock v. Baxter Healthcare Corp. 96 F.Supp.2d 1352, 1358-59 (S.D. Ala. 2000)(denying plaintiff's motion to remand on basis that non-diverse retailer of allegedly defective product had no causal relation to plaintiff's injuries).

**C.    Plaintiff's Claims Against Chip Ellis Cars Fails Due to the Arbitration Agreement.**

42.   Chip Ellis Cars is not a proper defendant in this action because the purchaser of 2000 Chrysler Cirrus, Lorene Bentley and Christopher Traylor, agreed to submit all claims, demands, disputes or controversies of every kind or nature that may arise out of the performance or condition of the vehicle to binding arbitration.  See Exhibit C. The arbitration clauses contained in Lorene Bentley and Christopher Traylor's contract with Chip Ellis Cars encompass the claims alleged against Chip Ellis Cars in plaintiff's complaint, and those claims against Chip Ellis Cars should be determined in arbitration proceedings separate from this lawsuit.  Thus,

because the purchaser is required to submit his claims against Chip Ellis Cars to arbitration, the only arguably proper defendant in this action is DCC.

43.   Upon information and belief, assuming arguendo, that privity of contract somehow exists between plaintiff and Chip Ellis Cars, Chip Ellis Cars intends to file a Motion to Compel Arbitration to compel plaintiff to submit his claims to arbitration pursuant to the arbitration contract between Chip Ellis Cars and Lorene Bentley and Christopher Traylor.   DCC has attached the pertinent arbitration clauses as Exhibit C.

## IV.   THE   AMOUNT   IN   CONTROVERSY   EXCEEDS   THIS   COURT'S JURISDICTIONAL THRESHOLD.

44.   The amount in controversy in this action exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.  Any potential award of punitive damages against the defendant is included in determining the amount in controversy if such punitive damages are recoverable under governing law.  Bell v. Preferred Life Assurance Society of Montgomery, Alabama, 320 U.S. 238, 240 (1943); Holly Equipment Co. v. Credit Alliance Corp., 821 F. 2d 1531, 1535 (11th Cir. 1987).

45.   The matter in controversy in this case exceeds $75,000.00, exclusive of interests and costs, inasmuch as the plaintiff claims compensatory and punitive damages against DCC. Under Alabama law, punitive damage awards in cases involving claims against product manufacturers routinely exceed the jurisdictional minimum, and Alabama juries have awarded damages in excess of $75,000.00 many times.  See, e.g., General Motors Corp. v. Saint, 646 So.2d 564, 565 (Ala. 1994) (jury returned verdict of $13,000,000 in products liability action against an automobile manufacturer);   Sears, Roebuck and Co. v. Harris, 630 So.2d 1018 (Ala. 1993) ($12,000,000 damages award remitted to $7,350,001); General Motors Corp. v. Johnston, 592 So.2d 1054 (Ala. 1992) ($15,000,000 punitive damages award affirmed).

16

8.    Moreover, "[w]hen the complaint does not claim a specific amount of damages, removal from state court is proper if it is facially apparent from the Complaint that the amount in controversy exceeds the jurisdictional requirement." Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001); Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356-57 (11th Cir. 1996)(holding that "[w]here a plaintiff has made an unspecified demand for damages, a lower burden of proof is warranted because there is simply no estimate of damages to which a court may defer"), overruled on other grounds by Office Depot v. Cohen, 204 F.3d 1069 (11th Cir. 2000). It is apparent from the allegations of the Complaint that this case, which involves claims of severe, permanent injuries as well as claims for punitive damages, involves a controversy whose value for removal purposes is greater than $75,000.00. Further, the Complaint contains no disclaimer that plaintiff seeks less than $75,000.00 exclusive of interests and costs.

## V.    THIS COURT HAS JURISDICTION UNDER 28 U.S.C. §1332.

46.    As set forth above, diversity of citizenship exists between the true parties in this case, Plaintiff and Petitioner, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Accordingly, pursuant to 28 U.S.C. §§1332 and 1446, this case is removable to this Court.

47.    Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal is being filed with the Circuit Court of Macon County, Alabama.

48.    Copies of all process, pleadings and other orders served on petitioner are attached as Exhibit A.

49.    All properly joined parties join and consent to this removal.[3]

---

[3] As noted, the Chip Ellis entities have not yet been served.  As a general rule, defendants who have not been served with process or are otherwise not subject to the personal jurisdiction of the state court may be ignored for the purposes of requiring their joinder in the notice of

50.    Petitioner reserves the right to amend or supplement this Notice of Removal.

**WHEREFORE**, Petitioner prays that the filing of the Notice of Removal, and the giving

of written notice thereof to the plaintiff, and the filing of a copy of this Notice of Removal with

the Clerk of the Circuit Court of Macon County, Alabama, shall effect removal of said suit to

this Court.

---

removal. McCrary v. Kansas City S. R.R., 121 F.Supp.2d 566 (D.C. 2000)(only served defendants must consent to removal); Johnson v. Scimed, Inc., 92 F.Supp.2d 587 (D.C.La. 2000)(only those defendants who are properly joined and served must join in the notice of removal); Fuller v. Exxon Corp., 78 F.Supp.2d 1289 (D.C.Ala. 1999); Central Illinois Carpenters Health & Welfare Trust Fund v. Philip Morris, Inc., 28 F.Supp.2d 514 (D.C.Ill. 1998) *vacated on reconsideration on other grounds* 85 F.Supp.2d 875 (D.C.Ill. 1998)(failure of unserved defendants to join petition for removal was not a procedural defect requiring remand). Additionally, because DCC is removing this case under the theories of federal officer removal and, alternatively, fraudulent joinder of the Chip Ellis entities, their consent is not required. See Ely Valley Mines, Inc. v. Hartford Accident & Indem. Co., 644 F.2d 1310, 1315 (9th Cir. 1981) (removal under federal officer or agency theory does not require consent of other defendants); Clay v. Brown & Williamson Tobacco Corp., 77 F.Supp.2d 1220, 1223 fn. 3 (M.D. Ala. 1999), citing Erkins v. American Bankers Ins. Co. of Florida, 866 F.Supp. 1373, 1375 (N.D. Ala. 1994) ("Unless and until the case is remanded it is not necessary that a fraudulently or improperly joined defendant join with the other defendants in a petition for removal. . .")

One of the Attorneys for Defendant
DaimlerChrysler Corporation

OF COUNSEL:
Michael L. Bell (BELLM6182)
J. Chandler Bailey (BAILC4526)
Natasha L. Wilson (WILSN6654)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama  35203-3200
(205) 581-0700
(205) 581-0799 (fax)

**CERTIFICATE OF SERVICE**

       I hereby certify that I have on this <u>25th</u> day of <u>January</u>, 2007, served the foregoing upon counsel of record for all parties to this proceeding, by placing a copy thereof in the United States Mail, first-class postage thereon prepaid and properly addressed as follows:

      Walter E. McGowan
      GRAY, LANGFORD, SAPP, MCGOWAN, GRAY & NATHANSON
      P.O. Box 830239
      Tuskegee, AL  36083
      *Attorney for Plaintiff*

      Thomas P. Willingham
      ALVIS & WILLINGHAM, LLP
      Suite 475
      Birmingham, AL  35242
      *Attorney for Plaintiff*

               Of Counsel

20

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- _244_ |
| --- | --- | --- |

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**  vs.  **CHRYSLER CORPORATION, et al.,**

Plaintiff,                                    Defendants.

NOTICE TO:     DAIMLERCHRYSLER CORPORATION
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐     TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X     This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_12-11_____ ,2006     _Eddie Wall_ By: _____
Date                                                          Clerk/Register

RETURN ON SERVICE:

☐     Certified Mail return receipt received in this office on (Date) _____.
(Return receipt attached hereto).

☐     I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama, on (Date)
_____.

_____, 2006     _____
Date                                                          Server Signature

Address of Server_____     _____
_____     Type of Process Server

# EXHIBIT A

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- _244_ |
|---|---|---|

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**        vs.     **CHRYSLER CORPORATION, et al.,**

Plaintiff,                             Defendants.

NOTICE TO:      CHIP ELLIS CARS AMERICA INCORPORATED,
                     C/O Leven H. Ellis, IV
                     2181-A Cobbs Ford Road
                     Prattville, AL 36067

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐     TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X     This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_12-11_       ,2006     _Eddie Nalleby_   By: _____
Date                                                Clerk/Register

RETURN ON SERVICE:

☐     Certified Mail return receipt received in this office on (Date) _____.
      (Return receipt attached hereto).

☐     I certify that I personally delivered a copy of the Summons and Complaint to _____
      _____ in _____ County, Alabama, on (Date) _____.

_____, 2006     _____
Date                                   Server Signature

Address of Server_____     _____
_____                 Type of Process Server

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- *244* |
|---|---|---|

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**        vs.    **CHRYSLER CORPORATION, et al.,**

Plaintiff,                                    Defendants.

NOTICE TO:        CHIP ELLIS, INC.
C/O Leven H. Ellis, IV
6005 Camelot Circle
Montgomery, AL 36117

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐    TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X    This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

*12-11-*_____,2006    *Eddie Nolled*By:_____
Date                                        Clerk/Register

RETURN ON SERVICE:

☐    Certified Mail return receipt received in this office on (Date) _____.
(Return receipt attached hereto).

☐    I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama, on (Date)
_____.

_____, 2006    _____
Date                                        Server Signature

Address of Server_____    _____
_____        Type of Process Server
_____

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06-*244* |
|---|---|---|

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**                    **vs.**      **CHRYSLER CORPORATION, et al.,**

    Plaintiff,                                        Defendants.

NOTICE TO:          CHIP ELLIS, INC.
                  C/O Leven H. Ellis, IV
                  6005 Camelot Circle
                  Montgomery, AL 36117

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

---

☐    TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X    This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

*12-11-06*          ,2006          _____  By: *Eddie D. Wallad*
Date                                                                    Clerk/Register

---

RETURN ON SERVICE:

☐    Certified Mail return receipt received in this office on (Date) _____.
       (Return receipt attached hereto).

☐    I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama, on (Date)
_____.

_____, 2006          _____
Date                                                                    Server Signature

Address of Server_____          _____
_____          Type of Process Server
_____

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- 244 |
|---|---|---|

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**  vs.  **CHRYSLER CORPORATION, et al.,**

Plaintiff,  Defendants.

NOTICE TO:   CHIP ELLIS, INC.
C/O Leven H. Ellis, IV
6005 Camelot Circle
Montgomery, AL 36117

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐  TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X  This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_12-11-_____,2006   _____ By: _Eddie D. Hallaa_

Date   Clerk/Register

RETURN ON SERVICE:

☐  Certified Mail return receipt received in this office on (Date) _____.
(Return receipt attached hereto).

☐  I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama, on (Date)
_____.

_____, 2006   _____

Date   Server Signature

Address of Server_____   _____

_____   Type of Process Server

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- **244** |
|---|---|---|

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**                    vs.    **CHRYSLER CORPORATION, et al.,**

Plaintiff,                                                    Defendants.

NOTICE TO:    CHIP ELLIS CARS AMERICA INCORPORATED,
C/O Leven H. Ellis, IV
2181-A Cobbs Ford Road
Prattville, AL 36067

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐    TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X    This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_12-11_____,2006        _____ By: _Eddie D. Wallad_
Date                                                                Clerk/Register

RETURN ON SERVICE:

☐    Certified Mail return receipt received in this office on (Date) _____.
(Return receipt attached hereto).

☐    I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama, on (Date)
_____.

_____, 2006        _____
Date                                                Server Signature

Address of Server_____        _____
_____        Type of Process Server
_____

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- _244_ |
|---|---|---|

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**            vs.      **CHRYSLER CORPORATION, et al.,**

Plaintiff,                                              Defendants.

NOTICE TO:      CHIP ELLIS CARS AMERICA INCORPORATED,
C/O Leven H. Ellis, IV
2181-A Cobbs Ford Road
Prattville, AL 36067

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐      TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X      This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_12-11_____ ,2006        _____ By: _Eddie D. Wallard_
Date                                                              Clerk/Register

RETURN ON SERVICE:

☐      Certified Mail return receipt received in this office on (Date) _____.
(Return receipt attached hereto).

☐      I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama, on (Date)
_____.

_____ , 2006      _____
Date                                              Server Signature

Address of Server _____      _____
_____      Type of Process Server
_____

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- **244** |
|---|---|---|

### IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**          vs.      **CHRYSLER CORPORATION, et al.,**

Plaintiff,                                    Defendants.

NOTICE TO:        DAIMLERCHRYSLER CORPORATION
c/o The Corporation Company
2000 Interstate Park Drive, Suite 204
Montgomery, AL 36109

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at 1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐       TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X       This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_12-11_____,2006      _Eddie Nelson_ By:_____
Date                                                        Clerk/Register

RETURN ON SERVICE:

☐       Certified Mail return receipt received in this office on (Date) _____.
(Return receipt attached hereto).

☐       I certify that I personally delivered a copy of the Summons and Complaint to _____
_____ in _____ County, Alabama, on (Date)
_____.

_____, 2006      _____
Date                                              Server Signature

Address of Server_____   _____
_____      Type of Process Server
_____

| State of Alabama<br>Unified Judicial System | **SUMMONS - CIVIL** | Case Number<br>CV-06- _244_ |
|---|---|---|

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

**DONTE TONEY,**       vs.     **CHRYSLER CORPORATION, et al.,**

    Plaintiff,                 Defendants.

NOTICE TO:      DAIMLERCHRYSLER CORPORATION
                   c/o The Corporation Company
                   2000 Interstate Park Drive, Suite 204
                   Montgomery, AL 36109

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You or your attorney are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Complaint to THOMAS P. WILLINGHAM at1400 Urban Center Drive, Suite 475, Birmingham, AL 35242. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS AFTER THIS SUMMONS AND COMPLAINT WERE DELIVERED TO YOU OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. YOU MUST ALSO FILE THE ORIGINAL OF YOUR ANSWER WITH THE CLERK OF THIS COURT.

☐     TO ANY SHERIFF by either Rule 4.1(b)(2) or 4.2(b)(2) or 4.4(b)(2) of the Alabama Rules of Civil Procedure: You are hereby commanded to serve this summons and a copy of the complaint in this action upon Defendant.

X     This service by certified mail of this summons is initiated upon written request of the Plaintiff pursuant to Rule 4.1(c) of the Alabama Rules of Civil Procedure.

_12-11-_ _____ ,2006     _Eddie Wall_ By:_____
Date                                                 Clerk/Register

RETURN ON SERVICE:

☐     Certified Mail return receipt received in this office on (Date) _____.
       (Return receipt attached hereto).

☐     I certify that I personally delivered a copy of the Summons and Complaint to _____
       _____ in _____ County, Alabama, on (Date)
       _____.

_____, 2006     _____
Date                                      Server Signature

Address of Server_____     _____
_____     Type of Process Server
_____

## IN THE CIRCUIT COURT OF MACON COUNTY, ALABAMA

DONTE TONEY, Individually,

       PLAINTIFF,

VS.

CV O6 - *244*

DAIMLERCHRYSLER CORPORATION, a corporation,
CHIP ELLIS CARS AMERICA INCORPORATED, a corporation,
CHIP ELLIS, INC., a corporation,

No. 1, whether singular or plural, that entity or those entities which developed and/or manufactured the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

No. 2, whether singular or plural, that entity or those entities which marketed, distributed, or sold the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

No. 3, whether singular or plural, that entity or those entities which advertised the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

No. 4, whether singular or plural, that entity or those entities which had any role in the distributive chain of the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

No. 5, whether singular or plural, that entity or those entities which were merchants or seller with respect to the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

No. 6, whether singular or plural, that entity or those entities which issued any warranty, express or implied, with respect to the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

No. 7, whether singular or plural, that entity or those entities which selected the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint for the particular purpose for which it was required or used;

No. 8, whether singular or plural, that entity or those entities which made any promise or affirmation of fact relating to the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

No. 9, whether singular or plural, that entity or those entities which issued any description of goods or samples with respect to the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

No. 10, whether singular or plural, that entity or those entities which were merchants or sellers of the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint and which impliedly warranted that said 2000 CHRYSLER CIRRUS automobile was merchantable;

No. 11, whether singular or plural, that entity or those entities which were sellers of the

1

2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint and which impliedly warranted that said 2000 CHRYSLER CIRRUS automobile was fit for the particular purpose for which it was required;

**No. 12**, whether singular or plural, that entity or those entities which provided information referable to the quality, worthiness or fitness of the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint;

**No. 13**, whether singular or plural, that entity or those entities who or which was responsible for adequately testing for the condition and safety of the 2000 CHRYSLER CIRRUS automobile which Plaintiff was driving on the occasion made the basis of Plaintiff's complaint;

**No. 14**, whether singular or plural, that entity or those entities who were responsible for providing instructions for use or issuing adequate warnings to persons of the dangers associated with defects of the 2000 CHRYSLER CIRRUS automobile in the event of a collision;

**No. 15**, whether singular or plural, that entity or those entities whose breach of warranty was a proximate cause of Plaintiff's injuries;

**No. 16**, whether singular or plural, that entity or those entities which provided product liability and/or general liability insurance coverage for the manufacturer and/or distributor of the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of Plaintiff's complaint at the time of said occurrence or at any time prior thereto;

**No. 17**, whether singular or plural, that entity or those entities who or which performed any consulting work, i.e., advertising, engineering, etc., referable to the design, manufacture and/or assembly of the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of Plaintiff's complaint;

**No. 18**, whether singular or plural, that entity or those entities which failed to warn or issued inadequate warnings with reference to the danger associated with the use of the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint or similar products;

**No. 19**, whether singular or plural, that entity or those entities who or which provided maintenance and upkeep on the motor vehicle(s) involved in the occurrence made the basis of this lawsuit;

**No. 20**, whether singular or plural, that entity or those entities who or which did any repair work on the motor vehicle(s) involved in the occurrence made the basis of this lawsuit;

**No. 21**, whether singular or plural, that entity or those entities who or which were the master or principal of the driver of the motor vehicle(s) involved in the occurrence made the basis of this lawsuit;

**No. 22**, whether singular or plural, that entity or those entities who or which was responsible for the condition or state of repair of the vehicle(s) involved in the occurrence made the basis of this lawsuit;

**No. 23**, whether singular or plural, that entity or those entities, that individual or those individuals who or which repaired, altered, or maintained the vehicle(s) involved in the

2

occurrence made the basis of this lawsuit;

**No. 24**, whether singular or plural, that entity or those entities who or which tested, inspected, approved, or issued any approval of any of the vehicles involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith;

**No. 25**, whether singular or plural, that entity or those entities other than those entities described above whose breach of contract or warranty contributed to cause the occurrence made the basis of this lawsuit;

**No. 26**, whether singular or plural, that entity or those entities which developed and/or manufactured any component parts of the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of the Plaintiff's complaint, including seat belts;

**No. 27**, whether singular or plural, that entity or those entities, whose negligence, wantonness, or other wrongful conduct contributed to cause the occurrence made the basis of Plaintiff's complaint;

**No. 28**,  whether singular or plural, that entity or those entities known and doing business as DaimlerChrysler Corporation;

**No. 29**, whether singular or plural, that entity or those entities known and doing business as Chip Ellis Cars America Incorporated;

**No. 30**, whether singular or plural, that entity or those entities known and doing business as Chip Ellis, Inc.;

**No. 31**, whether singular or plural, that entity or those entities, other than those entities described above, which is the successor in interest of any of the entities of the entities described above;

**No. 32**, whether singular or plural, that entity or those entities, other than those entities described above, which was the predecessor corporation of any of the entities described above.

(Plaintiff avers that the identity of the fictitious party defendants is otherwise unknown to Plaintiffs at this time, or, if their names are known to Plaintiff at this time their identity as proper party defendants is not known to Plaintiff at this time; but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained.)

DEFENDANTS.

## **COMPLAINT**

**COMES NOW** the Plaintiff, DONTE TONEY, individually, who brings civil causes

of action and demands a jury trial against the Defendants, DAIMLERCHRYSLER

CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED and CHIP ELLIS,

3

INC., for the severe and permanent injuries suffered and the damages incurred as a proximate cause of the Defendants' negligence or wanton conduct. In support of his claims, the Plaintiff alleges the following facts:

## STATEMENT OF PARTIES, JURISDICTION & VENUE

1.    Plaintiff, Donte Toney, is an adult individual above the age of nineteen (19) and a resident citizen of Macon County, Alabama. As such, venue is appropriate in this County pursuant to 6-3-7 (a)(3) Ala. Code 1975.

2.    Defendant, DAIMLERCHRYSLER CORPORATION, is a foreign corporation doing business within the State of Alabama, including, but not limited to, Macon County, Alabama.

3.    Defendant, Chip Ellis Cars America Incorporated is an Alabama Corporation which does business within the State of Alabama.

4.    Defendant, Chip Ellis, Inc. is an Alabama Corporation which does business within the State of Alabama.

5.    The amount in controversy exceeds the jurisdictional limits of this Court.

6.    This is an action for severe and permanent injuries to the Plaintiff, Donte Toney, occurring on July 31, 2006, within Macon County, Alabama.

7.    At all times relevant and material to the allegations of this Complaint, and prior thereto, the Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED and CHIP ELLIS, INC. were engaged in the business of designing, manufacturing, importing, furnishing, distributing, and/or selling said vehicles for use by the general public, including the 2000 Chrysler Cirrus

4

automobile, VIN 1C3EJ56HXYN103944, involved in the incident made the basis of this suit.

8.    The fictitious Defendants described in the caption of this Complaint are hereby added to and incorporated in this action as defendants by this reference.  Any and all counts, allegations, and claims against the named Defendants are hereby also made against each and all fictitious Defendants.

## STATEMENT OF FACTS

9.    Plaintiff adopts and incorporates each and every allegation and averment set forth in paragraphs 1 through 9, as if they were fully set out herein.

10.    On or about July 31, 2006, Plaintiff was driving a 2000 Chrysler Cirrus vehicle, VIN 1C3EJ56HXYN103944, hereinafter referred to as the subject vehicle, northbound on Alabama 199 in Macon County, Alabama.  At said time and place, Plaintiff, Donte Toney was driving the subject vehicle when it lost directionally stability because of its defective steering system, rolled over and landed on its roof.  During the accident, the roof collapsed causing Plaintiff's catastrophic spinal injury.

11.    At that time of this accident, the subject vehicle being driven by the Plaintiff was a 2000 CHRYSLER CIRRUS vehicle, VIN 1C3EJ56HXYN103944 and its component parts had been designed, manufactured, furnished, sold, or supplied by the Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC., and/or one or more of the fictitious party Defendants described herein.

12.    The 2000 CHRYSLER CIRRUS vehicle, VIN 1C3EJ56HXYN103944, was

5

purchased from Defendant, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP

ELLIS, INC., by Lorene Bentley in 2004.

13.     As a proximate consequence of the defective condition of the subject

vehicle, Donte Toney suffered the following severe and permanent personal injures:

(a)     He suffered blunt trauma injuries;

(b)     He suffered a catastrophic spinal cord injury, including, but not

limited to, quadriplegia;

(c)     He can no longer perform any of the normal daily activities and will

need the assistance of others in the future in order to perform his

daily activities.

(d)     He was caused to incur medical expenses for treatment of his

injuries, and he will be caused in the future to incur medical

expenses for the treatment of his totally incapacitating injuries;

(e)     He was caused to suffer extreme and severe emotional distress as

a result of these injuries, and he will be caused to suffer mental

anguish and emotional distress in the future, as a result of these

injuries; and

(f)     He was caused to lose wages and will lose wages in the futures,

and his earning capacity has been completely diminished as a

result of the totally disabling injuries he received in this accident;

and

(g)     His injuries are permanent and ongoing.

6

## COUNT I

### ALABAMA EXTENDED MANUFACTURER LIABILITY DOCTRINE

14.    Plaintiff adopts and realleges each and every allegation and averment set forth in the foregoing paragraphs of this Complaint as if they were fully set forth herein.

15.    Plaintiff further avers and alleges that at the time of the subject accident, he was operating the subject 2000 CHRYSLER CIRRUS vehicle, VIN 1C3EJ56HXYN103944, and as it rounded a curve, he lost directional stability as a result of the defective condition of the steering system in this vehicle. During this accident, the subject vehicle rolled over and landed on its roof, which resulted in its total collapse and caused the severe and permanent injuries to Plaintiff, Donte Toney. As a result of the aforementioned defects in this vehicle, the Plaintiff prosecutes this claim pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

16.    Prior to the aforesaid time and place, the Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC., and/or one or more of the fictitious party Defendants described herein were engaged in the business of designing, manufacturing, furnishing, selling and/or distributing said vehicles throughout the United States, including the State of Alabama, for use by the general public. Said Defendants during said period of time and for valuable consideration designed, manufactured, furnished, sold and/or distributed said vehicle which contributed to cause the Plaintiff's severe and permanent injuries.

17.    At said time and place, said vehicle, which was in substantially the same

7

condition as when manufactured, furnished, sold and/or distributed, was being used in a manner that was foreseeable. The vehicle was not reasonably safe when being used in a foreseeable manner, but, to the contrary, was defective and unreasonably dangerous to the human body when being so used. Said Defendants knew, or in the exercise of reasonable care should have known, that said vehicle was unreasonably dangerous to the human body when being so used in a foreseeable manner. Specifically, the steering system of the subject vehicle was defectively designed and resulted in the loss of directional stability of this vehicle, which caused this accident. Further, Plaintiff alleges that the roof structure for this vehicle was defectively designed and caused it to collapse during the roll over accident and caused the Plaintiff's severe and permanent injuries, including quadriplegia.

18.     The defective condition of the 2000 CHRYSLER CIRRUS vehicle, VIN 1C3EJ56HXYN103944, was the proximate cause of the severe and permanent injuries of Donte Toney and renders Defendants liable to Plaintiff pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

19.     Plaintiff alleges that his injuries were caused as a proximate consequence of the violation of the Alabama Extended Manufacturer's Liability Doctrine and other wrongful conduct of these Defendants as described in this Complaint.

20.     As a proximate conduct of the violation of the Alabama Extended Manufacturer's Liability Doctrine by the Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC. and the fictitious parties described in this Complaint, combined and concurred, and as a

8

direct and proximate consequence thereof, the Plaintiff suffered the severe and

permanent injuries as follows:

      (a)    He suffered blunt trauma injuries;

      (b)    He suffered a catastrophic spinal cord injury, including, but not

              limited to, quadriplegia;

      (c)    He can no longer perform any of the normal daily activities and will

              need the assistance of others in the future in order to perform his

              daily activities.

      (d)    He was caused to incur medical expenses for treatment of his

              injuries, and he will be caused in the future to incur medical

              expenses for the treatment of his totally incapacitating injuries;

      (e)    He was caused to suffer extreme and severe emotional distress as

              a result of these injuries, and he will be caused to suffer mental

              anguish and emotional distress in the future, as a result of these

              injuries; and

      (f)    He has caused to lose wages and will lose wages in the futures,

              and his earning capacity has been completely diminished as a

              result of the totally disabling injuries he received in this accident;

              and

      (g)    His injuries are permanent and ongoing.

      **WHEREFORE**, on the basis of the foregoing, Plaintiff requests that the jury

selected to hear this case render a verdict for the Plaintiff, and against the Defendants,

9

for compensatory damages in an amount which will adequately compensate Plaintiff for

the injuries and damages sustained by him due to the Defendants' conduct; and for

exemplary damages in an amount which will adequately reflect the wrongfulness of

Defendants' conduct. Further, Plaintiff requests that the Court enter judgment

consistent with the jury's verdict, and that it also award Plaintiff's interest from the date

of judgment and the costs incurred by the Court in managing this lawsuit.

**COUNT II**

**BREACH OF WARRANTY**

21.    Plaintiff adopts and realleges each and every allegation and averment set

forth in the foregoing paragraphs of this Complaint as if they were fully set forth herein.

22.    The Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS

CARS AMERICA INCORPORATED, CHIP ELLIS, INC. and one or more of the fictitious

party defendants named herein, impliedly warranted that the 2000 CHRYSLER

CIRRUS vehicle involved in the occurrence made the basis of this Complaint was

reasonably fit and suitable for the purposes for which it was intended to be used.

Plaintiff avers that said Defendants breached said implied warranties in that said

automobile was not reasonably fit and suitable for the purposes for which it was

intended to be used but, to the contrary, said 2000 CHRYSLER CIRRUS vehicle was in

a dangerously defective and unsafe condition.  Plaintiff further avers that as a

proximate result of the aforesaid breach of warranties by said Defendant, the Plaintiff

suffered injuries including quadriplegia.

23.    Plaintiff further avers that as a proximate result of the aforesaid breach of

10

warranty by the Defendants, both named and fictitious party Defendants, the Plaintiff

was permanently injured and damaged as follows:

(a)    He suffered blunt trauma injuries;

(b)    He suffered a catastrophic spinal cord injury, including, but not

limited to, quadriplegia;

(c)    He can no longer perform any of the normal daily activities and will

need the assistance of others in the future in order to perform his

daily activities.

(d)    He was caused to incur medical expenses for treatment of his

injuries, and he will be caused in the future to incur medical

expenses for the treatment of his totally incapacitating injuries;

(e)    He was caused to suffer extreme and severe emotional distress as

a result of these injuries, and he will be caused to suffer mental

anguish and emotional distress in the future, as a result of these

injuries; and

(f)    He has caused to lose wages and will lose wages in the futures,

and his earning capacity has been completely diminished as a

result of the totally disabling injuries he received in this accident;

and

(g)    His injuries are permanent and ongoing.

**WHEREFORE**, on the basis of the foregoing, Plaintiff requests that the jury

selected to hear this case render a verdict for the Plaintiff, and against the Defendants,

11

for compensatory damages in an amount which will adequately compensate Plaintiff for

the injuries and damages sustained by him due to the Defendants' conduct; and for

exemplary damages in an amount which will adequately reflect the wrongfulness of

Defendants' conduct. Further, Plaintiff requests that the Court enter judgment

consistent with the jury's verdict, and that it also award Plaintiff's interest from the date

of judgment and the costs incurred by the Court in managing this lawsuit.

## COUNT III

### NEGLIGENCE

24.    Plaintiff adopts and realleges each and every allegation and averment set

forth in foregoing paragraphs of this Complaint as if they were fully set forth herein.

25.    The Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS

CARS AMERICA INCORPORATED, CHIP ELLIS, INC., and/or one or more of the

fictitious party defendants as set out in this Complaint were under a duty to design,

manufacture, and sell a reasonably safe motor vehicle.

26.    The Defendants' as set out herein breached this duty by failing to use

reasonable care in the design, manufacture, assembly, and sell of the subject 2000

CHRYSLER CIRRUS vehicle, VIN 1C3EJ56HXYN103944, involved in the accident

made the basis of Plaintiff's Complaint.  This negligent conduct was the proximate

cause of the severe and permanent injuries to Plaintiff, Donte Toney, as hereinafter

described.

27.    Plaintiff alleges that his severe and permanent injuries were caused as a

proximate consequence of the negligent conduct and of this wrongful conduct of the

12

Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC. and/or one or more of the fictitious party defendants as set out herein as hereinafter described.

28.     The aforesaid wrongful conduct of the Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC., and/or one or more of the fictitious party defendants as set out herein, combined and concurred, and as a proximate consequence thereof, the Plaintiff suffered severe injuries as follows:

(a)     He suffered blunt trauma injuries;

(b)     He suffered a catastrophic spinal cord injury, including, but not limited to, quadriplegia;

(c)     He can no longer perform any of the normal daily activities and will need the assistance of others in the future in order to perform his daily activities.

(d)     He was caused to incur medical expenses for treatment of his injuries, and he will be caused in the future to incur medical expenses for the treatment of his totally incapacitating injuries;

(e)     He was caused to suffer extreme and severe emotional distress as a result of these injuries, and he will be caused to suffer mental anguish and emotional distress in the future, as a result of these injuries; and

(f)     He has caused to lose wages and will lose wages in the futures,

13

and his earning capacity has been completely diminished as a

result of the totally disabling injuries he received in this accident;

and

(g)    His injuries are permanent and ongoing.

**WHEREFORE**, on the basis of the foregoing, Plaintiff requests that the jury

selected to hear this case render a verdict for the Plaintiff, and against the Defendants,

for compensatory damages in an amount which will adequately compensate Plaintiff for

the injuries and damages sustained by him due to the Defendants' conduct; and for

exemplary damages in an amount which will adequately reflect the wrongfulness of

Defendants' conduct. Further, Plaintiff requests that the Court enter judgment

consistent with the jury's verdict, and that it also award Plaintiff's interest from the date

of judgment and the costs incurred by the Court in managing this lawsuit.

## COUNT IV

### WANTONNESS

29.    Plaintiff adopts and realleges each and every allegation and averment set

forth in foregoing paragraphs of this Complaint as if they were fully set forth herein.

30.    The Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS

CARS AMERICA INCORPORATED, CHIP ELLIS, INC., and/or one or more of the

fictitious party defendants as set out herein, were guilty of wanton conduct in the

design, manufacture, and sell of the subject 2000 CHRYSLER CIRRUS vehicle, VIN

1C3EJ56HXYN103944; made the basis of this litigation. The Defendants, both named

and fictitious party Defendants, consciously failed to design a reasonably safe vehicle

14

with knowledge that their failure to design a reasonably safe vehicle would likely or probably result in death or serious injury to occupants of their vehicle, such as Plaintiff, Donte Toney. The wanton conduct of the Defendants, both named and fictitious party Defendants, was the proximate cause of the severe and permanent injuries to Donte Toney.

31.    The aforesaid wanton conduct of the Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC. and/or one or more of the fictitious party defendants as set out herein combined and concurred, and as a proximate consequence thereof, the Plaintiff suffered severe injuries as follows:

(a)    He suffered blunt trauma injuries;

(b)    He suffered a catastrophic spinal cord injury, including, but not limited to, quadriplegia;

(c)    He can no longer perform any of the normal daily activities and will need the assistance of others in the future in order to perform his daily activities.

(d)    He was caused to incur medical expenses for treatment of his injuries, and he will be caused in the future to incur medical expenses for the treatment of his totally incapacitating injuries;

(e)    He was caused to suffer extreme and severe emotional distress as a result of these injuries, and he will be caused to suffer mental anguish and emotional distress in the future, as a result of these

15

injuries; and

(f)    He has caused to lose wages and will lose wages in the futures, and his earning capacity has been completely diminished as a result of the totally disabling injuries he received in this accident; and

(g)    His injuries are permanent and ongoing.

**WHEREFORE**, on the basis of the foregoing, Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff, and against the Defendants, for compensatory damages in an amount which will adequately compensate Plaintiff for the injuries and damages sustained by him due to the Defendants' conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of Defendants' conduct. Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiff's interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

## COUNT V

## NEGLIGENT FAILURE TO WARN

32.    Plaintiff adopts and realleges each and every allegation and averment set forth in the foregoing paragraphs of this Complaint as if they were fully set forth herein.

33.    The Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC. and/or one or more of the fictitious party defendants as set out herein negligently failed to warn foreseeable users as to certain dangers in the use of the 2000 CHRYSLER CIRRUS vehicle, VIN

16

1C3EJ56HXYN103944, and said negligent conduct was a proximate cause of the

severe and permanent injuries of Donte Toney.

34.    The aforesaid negligent conduct of the Defendants, DAIMLERCHRYSLER

CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC.,

and/or one or more of the fictitious party defendants as set out herein, combined and

concurred, and as a proximate consequence thereof, the Plaintiff suffered severe

injuries as follows:

      (a)    He suffered blunt trauma injuries;

      (b)    He suffered a catastrophic spinal cord injury, including, but not

           limited to, quadriplegia;

      (c)    He can no longer perform any of the normal daily activities and will

           need the assistance of others in the future in order to perform his

           daily activities.

      (d)    He was caused to incur medical expenses for treatment of his

           injuries, and he will be caused in the future to incur medical

           expenses for the treatment of his totally incapacitating injuries;

      (e)    He was caused to suffer extreme and severe emotional distress as

           a result of these injuries, and he will be caused to suffer mental

           anguish and emotional distress in the future, as a result of these

           injuries; and

      (f)    He has caused to lose wages and will lose wages in the futures,

           and his earning capacity has been completely diminished as a

result of the totally disabling injuries he received in this accident;
and

(g)     His injuries are permanent and ongoing.

**WHEREFORE**, on the basis of the foregoing, Plaintiff requests that the jury

selected to hear this case render a verdict for the Plaintiff, and against the Defendants,

for compensatory damages in an amount which will adequately compensate Plaintiff for

the injuries and damages sustained by him due to the Defendants' conduct; and for

exemplary damages in an amount which will adequately reflect the wrongfulness of

Defendants' conduct. Further, Plaintiff requests that the Court enter judgment

consistent with the jury's verdict, and that it also award Plaintiff's interest from the date

of judgment and the costs incurred by the Court in managing this lawsuit.

<u>COUNT VI</u>

**WANTON FAILURE TO WARN**

35.     Plaintiff adopts and realleges each and every allegation and averment set

forth in the foregoing paragraphs of this Complaint as if they were fully set forth herein.

36.     The Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS

CARS AMERICA INCORPORATED, CHIP ELLIS, INC. and/or one or more of the

fictitious party defendants as set out herein wantonly failed to warn Plaintiff of the

dangers associated with use of said vehicle, and said wanton conduct was a proximate

cause of Plaintiff's severe and permanent injuries.

37.     Plaintiff alleges that his severe and permanent injuries were caused as a

proximate consequence of the wanton conduct and of this wrongful conduct of the

18

Defendant, as hereinafter described.

38.    The aforesaid wrongful conduct of the Defendant, combined and concurred, and as a proximate consequence thereof, the Plaintiff suffered severe injuries as follows:

(a)    He suffered blunt trauma injuries;

(b)    He suffered a catastrophic spinal cord injury, including, but not limited to, quadriplegia;

(c)    He can no longer perform any of the normal daily activities and will need the assistance of others in the future in order to perform his daily activities.

(d)    He was caused to incur medical expenses for treatment of his injuries, and he will be caused in the future to incur medical expenses for the treatment of his totally incapacitating injuries;

(e)    He was caused to suffer extreme and severe emotional distress as a result of these injuries, and he will be caused to suffer mental anguish and emotional distress in the future, as a result of these injuries; and

(f)    He has caused to lose wages and will lose wages in the futures, and his earning capacity has been completely diminished as a result of the totally disabling injuries he received in this accident; and

(g)    His injuries are permanent and ongoing.

19

**WHEREFORE**, on the basis of the foregoing, Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff, and against the Defendants, for compensatory damages in an amount which will adequately compensate Plaintiff for the injuries and damages sustained by him due to the Defendants' conduct; and for exemplary damages in an amount which will adequately reflect the wrongfulness of Defendants' conduct. Further, Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and that it also award Plaintiff's interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

## COUNT VII

### FICTITIOUS PARTY DEFENDANTS

39.    Plaintiff adopts and realleges each and every previous allegation of this Complaint as if fully set out herein.

40.    Plaintiff contends that the negligent or wanton conduct of the Defendants, DAIMLERCHRYSLER CORPORATION, CHIP ELLIS CARS AMERICA INCORPORATED, CHIP ELLIS, INC., and/or one or more of the fictitious party defendants, was the proximate cause of Plaintiff's injuries.  Specifically, Plaintiff alleges that the fictitious parties are liable to Plaintiff as follows:

Fictitious party defendant No. 1 is liable to plaintiff as that entity or those entities which developed and/or manufactured the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 2 is liable to plaintiff as that entity or those entities

20

which marketed, distributed or sold the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 3 is liable to plaintiff as that entity or those entities which advertised the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 4 is liable to plaintiff as that entity or those entities which had any role in the distributive chain of the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 5 is liable to plaintiff as that entity or those entities which were merchants or sellers with respect to the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 6 is liable to plaintiff as that entity or those entities which issued any warranty, express or implied with respect to the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 7 is liable to plaintiff as that entity or those entities which selected the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 8 is liable to plaintiff as that entity or those entities which made any promise or affirmation of fact relating to the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 9 is liable to plaintiff as that entity or those entities which issued any description of goods or samples with respect to the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 10 is liable to plaintiff as that entity or those entities which were merchants or sellers with respect to the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit and which impliedly warranted that said 2000 CHRYSLER CIRRUS was merchantable; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 11 is liable to plaintiff as that entity or those entities which were sellers of the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit and which impliedly warranted that said 2000 CHRYSLER CIRRUS was fit for the particular purpose for which it was required; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status,

22

supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 12 is liable to plaintiff as that entity or those entities which provided information referable to the quality, worthiness or fitness of the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 13 is liable to plaintiff as that entity or those entities which were responsible for adequately testing for the condition and safety of the 2000 CHRYSLER CIRRUS automobile which plaintiff was driving on the occasion made the basis of plaintiff's complaint; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 14 is liable to plaintiff as that entity or those entities who were responsible for providing instructions for use or issuing adequate warnings to persons of the dangers associated with defects of the 2000 CHRYSLER CIRRUS in the event of a collision; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 15 is liable to plaintiff as that entity or those entities whose breach of warranty was a proximate cause of plaintiff's injuries; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 16 is liable to plaintiff as that entity or those entities which provided product liability and/or general liability insurance coverage for the manufacturer and/or distributor of the 2000 CHRYSLER

23

CIRRUS involved in the occurrence made the basis of plaintiff's complaint; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 17 is liable to plaintiff as that entity or those entities whose breach of warranty was a proximate cause of plaintiff's injuries; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 18 is liable to plaintiff as that entity or those entities who or which performed any consulting work, i.e., advertising, engineering, etc., referable to the design, manufacture and/or assembly of the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of plaintiff's complaint; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 19 is liable to plaintiff as that entity or those entities which failed to warn or issued inadequate warnings with reference to the danger associated with the use of the 2000 CHRYSLER CIRRUS automobile involved in the occurrence made the basis of plaintiff's complaint or similar products; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 20 is liable to plaintiff as that entity or those entities who or which provided maintenance and upkeep on the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 21 is liable to plaintiff as that entity or those entities who or which did any repair work on the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 22 is liable to plaintiff as that entity or those entities which were the master or principal of the driver of the motor vehicle(s) involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 23 is liable to plaintiff as that entity or those entities which was responsible for the condition or state of repair of the vehicle(s) involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 24 is liable to plaintiff as that entity or those entities which repaired, altered, or maintained the vehicle(s) involved in the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 25 is liable to plaintiff as that entity or those entities which tested, inspected, approved, or issued any approval of the vehicles involved in the occurrence made the basis of this lawsuit, any component part thereof, or any attendant equipment used or available for use therewith; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status

is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 26 is liable to plaintiff as that entity or those entities other than those entities described above whose breach of contract or warranty contributed to cause the occurrence made the basis of this lawsuit; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 27 is liable to plaintiff as that entity or those entities which developed and/or manufactured any component parts of the 2000 CHRYSLER CIRRUS involved in the occurrence made the basis of this lawsuit, including seat belts; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 28 is liable to plaintiff as that entity or those entities whose negligence, wantonness or other wrongful conduct contributed to cause the occurrence made the basis of plaintiff's complaint; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 29 is liable to plaintiff as that entity or those entities known and doing business as DAIMLERCHRYSLER CORPORATION; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 30 is liable to plaintiff as that entity or those entities known and doing business as CHIP ELLIS CARS AMERICA INCORPORATED, their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter

26

of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 31 is liable to plaintiff as that entity or those entities known and doing business as CHIP ELLIS INC., their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

Fictitious party defendant No. 32 is liable to plaintiff as that entity or those entities other than those entities described above, which is the successor in interest of any of the entities described above; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused plaintiff's damages as set forth in this complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the plaintiff's damages as set forth in this complaint.

41.    The aforesaid conduct by the Defendants, and/or one or more of the fictitious party defendants as set out herein, combined and concurred, and as a proximate consequence thereof, Plaintiff Donte Toney suffered severe personal injuries; their conduct, actions, and inactions were negligent and/or wanton and/or malicious and/or intentional, and proximately caused Plaintiff's damages as set forth in this Complaint; and their legal status, employment status, supervisory control, and state of being renders them liable to Plaintiff as a matter of law, and such status is directly related to the actions or inactions of others which proximately caused the Plaintiff's damages as set forth in this Complaint.

WHEREFORE, on the basis of the foregoing, Plaintiff requests that the jury selected to hear this case render a verdict for the Plaintiff, and against the Defendants, for compensatory damages in an amount which will adequately compensate Plaintiff for

the injuries and damages sustained by him due to the Defendants' conduct; and for

exemplary damages in an amount which will adequately reflect the wrongfulness of

Defendants' conduct. Further, Plaintiff requests that the Court enter judgment

consistent with the jury's verdict, and that it also award Plaintiff's interest from the date

of judgment and the costs incurred by the Court in managing this lawsuit.


WALTER E. MCGOWAN (MC016)

**OF COUNSEL:**
**GRAY, LANGFORD, SAPP,**
**MCGOWAN, GRAY & NATHANSON**
P. O. Box 830239
Tuskegee, AL 36083
(334) 727-4830
(334) 727-5877


THOMAS P. WILLINGHAM (WIL156)

**OF COUNSEL:**
**ALVIS & WILLINGHAM, LLP**
1400 Urban Center Drive
Suite 475
Birmingham, Alabama 35242
(205) 298-1011
Facsimile: (205) 298-1012

28

## JURY DEMAND

Plaintiff hereby demands a trial by struck jury on all issues of this cause.

_____
Attorneys for Plaintiff

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL AS FOLLOWS:**

DAIMLERCHRYSLER CORPORATION
c/o The Corporation Company
2000 Interstate Park Drive
Suite 204
Montgomery, AL 36109

CHIP ELLIS CARS AMERICA INCORPORATED
c/o Leven H. Ellis, IV
2181-A Cobbs Ford Road
Prattville, AL 36067

CHIP ELLIS, INC.
c/o Leven H. Ellis, IV
6005 Camelot Circle
Montgomery, AL 36117

29

| State of Alabama<br>Unified Judicial System<br><br>Form ARCiv-93   Rev.5/99 | **COVER SHEET**<br>**CIRCUIT COURT – CIVIL CASE**<br>(Not For Domestic Relations Cases) | Case Number<br>C V  **2006**  **0244**  ☐ - ☐<br>Date of Filing:<br>**12**  **11**  **2006**  **XXX**<br>Month   Day   Year    Judge Code: |

GENERAL INFORMATION

IN THE CIRCUIT COURT OF _____ MACON _____, ALABAMA
_____ *(Name of County)*

DONTE TONEY _____ v. DAIMLERCHRYSLER CORPORATION, et al.

**Plaintiff**                                **Defendant**

First Plaintiff   ☐ Business   ☑ Individual       First Defendant   ☑ Business   ☐ Individual
　　　　　　　☐ Government  ☐ Other　　　　　　　　　　　　☐ Government  ☐ Other

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) the best characterizes your action:

| TORTS: PERSONAL INJURY | OTHER CIVIL FILINGS (cont'd) |
|---|---|
| ☐ WDEA - Wrongful Death | ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/<br>　　　　　Enforcement of Agency Subpoena/Petition to Preserve |
| ☐ TONG - Negligence: General | ☐ CVRT - Civil Rights |
| ☐ TOMV - Negligence: Motor Vehicle | ☐ COND - Condemnation/Eminent Domain/Right-of-Way |
| ☐ TOWA - Wantonness | ☐ CTMP - Contempt of Court |
| ☑ TOPL - Product Liability/AEMLD | ☐ CONT - Contract/Ejectment/Writ of Seizure |
| ☐ TOMM - Malpractice-Medical | ☐ TOCN - Conversion |
| ☐ TOLM - Malpractice-Legal | ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction<br>　　　　　Election Contest/Quiet Title/Sale For Division |
| ☐ TOOM - Malpractice-Other | ☐ CVUD - Eviction Appeal/Unlawful Detainer |
| ☐ TBFM - Fraud/Bad Faith/Misrepresentation | ☐ FORJ - Foreign Judgment |
| ☐ TOXX - Other: _____ | ☐ FORF - Fruits of Crime Forfeiture |
| | ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition |
| TORTS: PERSONAL INJURY | ☐ PFAB - Protection From Abuse |
| ☐ TOPE - Personal Property | ☐ FELA - Railroad/Seaman (FELA) |
| ☐ TORE - Real Property | ☐ RPRO - Real Property |
| OTHER CIVIL FILINGS | ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship |
| ☐ ABAN - Abandoned Automobile | ☐ COMP - Workers' Compensation |
| ☐ ACCT - Account & Nonmortgage | ☐ CVXX - Miscellaneous Circuit Civil Case |
| ☐ APAA - Administrative Agency Appeal | |
| ☐ ADPA - Administrative Procedure Act | |
| ☐ ANPS - Adults in Need of Protective Services | |

**ORIGIN** *(check one):*   F ☑ INITIAL FILING　　A ☐ APPEAL FROM　　O ☐ OTHER:
　　　　　　　　　　　　　　　　　　　　DISTRICT COURT　　_____
　　　　　　　　　R ☐ REMANDED　　　T ☐ TRANSFERRED FROM
　　　　　　　　　　　　　　　　　　　OTHER CIRCUIT COURT

**HAS JURY TRIAL BEEN DEMANDED?**   ☑ YES  ☐ NO    Note: Checking "Yes" does not constitute a demand for a<br>jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

**RELIEF REQUESTED:**   ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

**ATTORNEY CODE:**

| W | I | L | I | 5 | 6 |  *12/8/06* | *Tom W~~* |
|---|---|---|---|---|---|---|---|
| | | | | | | Date | Signature of Attorney/Party filing this form |

**MEDIATION REQUESTED:**   ☐ YES  ☐ NO  ☐ UNDECIDED

NTY CIRCUIT CLERK'S

723
AL 36083

7004 1350 0003 6144 9061

CERTIFIED MAIL

045J83078923
$5.60
neopost
12/15/2006
Mailed From 35242
US POSTAGE

1ST NOTICE  12-28
2ND NOTICE
RETURN

NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

CHIP ELLIS CARS AMERICA
INCORPORATED
C/O Leven H. Ellis, IV
605-A Cobbs Ford Road
Prattville, AL 36067

---

NTY CIRCUIT CLERK'S

0723
AL 36083

CERTIFIED MAIL

7004 1350 0003 6144 9054

045J83078923
$5.60
neopost
12/15/2006
Mailed From 35242
US POSTAGE

NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD

CHIP ELLIS, INC.
C/O Leven H. Ellis, IV
6005 Camelot Circle
Montgomery, AL 36117

NOT DELIVERABLE AS ADDRESSED
UNABLE TO FORWARD
RETURN TO SENDER

1-3-07

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| DONTE TONEY, | ) | CIVIL ACTION NO. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAIMLERCHRYSLER CORPORATION, a | ) | |
| corporation, CHIP ELLIS CARS AMERICA | ) | |
| INCORPORATED, a corporation, CHIP | ) | |
| ELLIS, INC., a corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**AFFIDAVIT OF LEVEN H. ELLIS, IV**

STATE OF ALABAMA                    )

COUNTY OF <u>MONTGOMERY</u>                    )

I, Leven H. Ellis, IV, having been duly sworn, deposes and says:

1.     I make this affidavit upon the best of my personal knowledge, information, and belief.

2.     I am over the age of 19 years and am currently a citizen of Alabama.

3.     I am the owner and operator of Chip Ellis Cars America, Incorporated and Chip Ellis, Inc. ("Chip Ellis Cars") in Montgomery, Alabama.  Chip Ellis Cars is in the business of purchasing and reselling used automobiles.  Chip Ellis Cars purchases finished vehicles and does not alter the automobiles that it purchases prior to their resale.

4.     According to my business records, Chip Ellis Cars sold a used 2000 Chrysler Cirrus (VIN# 1C3EJ56HXYN103944) (the "subject vehicle") to Lorene Bentley and Christopher Traylor.  See Attachment 1.

5.     I am familiar with the documents attached hereto, which include the Arbitration Agreement, Warranty Disclaimer, and the Sales Records relating to the subject vehicle in this case.  See Attachment 1, Exhibits A, B, and C.  These documents are true and correct copies of

**EXHIBIT B**

business records of Chip Ellis Cars. These records were prepared at or near the time of sale of the subject vehicle, and they are routinely and regularly kept in the ordinary course of business at Chip Ellis Cars.

6.     Prior to selling the above mentioned vehicle to Lorene Bentley and Christopher Traylor, Chip Ellis Cars purchased the subject vehicle from an auto wholesaler in a finished condition.

7.     Chip Ellis Cars is not in the business of designing, manufacturing or repairing automobiles.

8.     Chip Ellis Cars did not participate in the design or manufacture of the subject vehicle. Chip Ellis Cars did not alter the subject vehicle in any manner before selling the vehicle to Lorene Bentley and Christopher Traylor.

9.     Chip Ellis Cars or any of its employees did not perform any service or body work to the subject vehicle. Specifically, neither Chip Ellis Cars nor any of its employees performed any service work to the subject vehicle's roof design system, nor was that system altered while the vehicle was in Chip Ellis Cars' possession.

10.     Because Chip Ellis Cars did not alter the subject vehicle in any manner, any alleged defect would have been present at the time Chip Ellis Cars first received the subject vehicle.

11.     Neither Chip Ellis Cars nor any of its employees had any knowledge of any defective condition in the subject vehicle prior to its sale by Chip Ellis Cars.

12.     Chip Ellis Cars did not have an opportunity that was any greater than that of an ordinary purchaser to fully inspect the subject vehicle.

13.     Chip Ellis Cars has never had any dealings with Donte Toney with respect to the subject vehicle. As stated, Chip Ellis Cars sold the subject vehicle to someone else.

14.     Because Chip Ellis Cars had no dealings with Mr. Toney, Chip Ellis Cars did not provide him with any type of warranties relating to the subject vehicle.

15.     Furthermore, Chip Ellis Cars sold the 2000 Chrysler Cirrus to Lorene Bentley and

2

Christopher Traylor "as is" with no warranty whatsoever. See Exhibit B to Attachment 1, Sold "AS IS" With No Warranty Agreement.

FURTHER AFFIANT SAYETH NAUGHT.

Signature of Leven H. Ellis, IV
Owner and Operator
Chip Ellis Cars America, Incorporated and Chip Ellis, Inc.

I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Leven H. Ellis, IV, whose name is signed to the foregoing Affidavit, and who is known to me, was duly sworn and acknowledged before me on this day that, being informed of the contents above and the foregoing Affidavit, he executed the same voluntarily on the day the same bears date.

Given under my hand and seal on this the __25__ day of _January_, 2007.

Notary Public

My Commission Expires: 08|10|09

[SEAL]

3

# BUSINESS RECORDS

## ATTACHMENT 1

# CHIP ELLIS MOTORCARS, INC.

# ARBITRATION AGREEMENT
### (Dispute Resolution)
### The Undersigned further acknowledges and agrees as follows:

Buyer/lessor acknowledges and agrees that the vehicle purchased or leased herein has traveled in interstate commerce. Buyer/lessor thus acknowledges that the vehicle and other aspects of the sales or lease transaction are involved in, affect, or have a direct impact upon, interstate commerce.

**Buyer/lessor and dealer agree that all claims, demands, disputes or controversies of every kind or nature** that may arise between them concerning of the negotiations leading to the sale or lease of the vehicle, terms and provisions of the sale or lease arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale or lease **shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. Section 1 et. seq. and according to the Commercial Rules of the American Arbitration Association.** Without limiting the generality of the foregoing, it is the intention of the buyer/lessor and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale or lease, and its condition, including disputes concerning the terms and conditions of the sale or lease, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale or lease, any representations, promises or omissions made in connection with negotiations for the sale or lease of the vehicle, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance and vehicle extended warranty or service contract purchased or obtained in connection with the vehicle.

Either party may demand arbitration by filing the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The buyer/lessor and the dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where dealer's facility is located.

THE UNDERSIGNED HAS READ, UNDERSTOOD AND AGREES TO BE BOUND BY THE PROVISIONS, COVENANTS AND AGREEMENTS SET FORTH HEREIN ABOVE.

Date  _12-31-04_                          Buyer/Lessor Signature _[signature]_

Dealer Signature _[signature]_           Buyer/Lessor Signature _[signature]_

# EXHIBIT A

#60

# Chip Ellis Motorcars, Inc.

# SOLD "AS IS" WITH NO WARRANTY

Date: __12/31/04__

Vehicle: __00 CHRYSLER CIRRUS__

VIN #: __1C3EJ56HXYN103944__

I, __LORENE BENTLEY OR CHRISTOPHER TRAYLOR__, understand the vehicle I am purchasing from Chip Ellis Motorcars, Inc. is **SOLD "AS IS" WITH NO WARRANTY WHATSOEVER.** Also, I understand Chip Ellis Motorcars, Inc. is not liable for any mechanical breakdown after I have accepted delivery of this vehicle.

I HAVE DRIVEN AND INSPECTED THIS VEHICLE AND UNDERSTAND THAT IT MAY HAVE, OR HAS HAD MECHANICAL REPAIR AND/OR BODY DAMAGE REPAIR. NO ORAL REPRESENTATION AS TO MECHANICAL CONDITION SHOULD BE RELIED ON.

CHIP ELLIS MOTORCARS, INC. WILL NOT PAY FOR ANY REPAIRS AFTER DELIVERY OF THIS VEHICLE UNLESS AGREED ON IN WRITING AT THE TIME OF SALE. NO OTHER REPRESENTATION HAS BEEN RELIED ON BY ME IN MAKING MY DECISION TO BUY THIS VEHICLE.

CHIP ELLIS MOTORCARS, INC.

_____    _____
Buyer's Signature           Seller's Signature

_____
Buyer's Signature           **EXHIBIT B**

# Chip Ellis Motorcars, Inc.

## COMPANY POLICIES

As a customer of Chip Ellis Motorcars, Inc., you should be aware of some of our company policies:

1. No employee or associate of Chip Ellis Motorcars, Inc. is authorized to obligate the corporation in any manner, **EXCEPT an officer of the corporation.**

2. **Vehicles sold by Chip Ellis Motorcars, Inc. are sold "AS IS" and only repairs agreed on in writing at the time of sale will be done – anything else will be totally the customer's responsibility. The customer assumes full responsibility for any repairs done after delivery. WE DO NOT WARRANTY ANY PART OF THE VEHICLE FOR ANY PERIOD OF TIME.**

3. Chip Ellis Motorcars, Inc. represents all vehicles sold as having had previous body and/or mechanical repairs and **no other representation is to be relied on by the purchaser.** Most used vehicles have had body and mechanical repairs.

4. **Chip Ellis Motorcars DOES NOT loan vehicles, give refunds or exchange vehicles. ALL SALES ARE FINAL AND ARE VIDEOTAPED.**

5. Chip Ellis Motorcars, Inc. encourages each customer to test drive and check out any vehicle at the shop of his choice **prior to** purchasing the vehicle.

6. **Only agreements in writing will be honored by Chip Ellis Motorcars, Inc.. No other agreement should be relied on and is not considered an obligation of Chip Ellis Motorcars, Inc., its officers, directors, stockholders or associates.**

## DECISION TO BUY

I have driven and inspected the vehicle I am purchasing and I am satisfied with the mechanical and body condition of the vehicle I chose to purchase.

**I HAVE MADE MY OWN INDEPENDENT DECISION TO BY THIS VEHICLE AND MY DECISION TO BUY WAS NOT INFLUENCED BY ANY REPRESENTATIONS MADE BY THE SALES PERSON AS TO THE MECHANICAL OR BODY CONDITION OF THE VEHICLE.**

I fully understand that only representations in writing made by the dealership should be relied on by me in making my decision to buy.

My decision to buy is based on my acceptance of the condition of the vehicle and all terms of the purchase.

ABSOLUTELY NO ORAL REPRESENTATION WAS RELIED ON BY ME IN MAKING MY DECISION TO BUY, INCLUDING ORAL STATEMENTS ABOUT MECHANICAL CONDITION OR THE BODY CONDITION OF THE VEHICLE.

_12-31-04_
Date

_[signature]_
Buyer's Signature

_[signature]_
Chip Ellis Motorcars, Inc.

_[signature]_
Buyer's Signature

# Chip Ellis Motorcars, Inc.

## AGREED ON PRICING

Undersigned Buyer acknowledges that the **AGREED ON PRICE OF THE VEHICLE BEING PURCHASED IS** _____9566. 87_____ **TOTAL**, including tax, title fee and processing fee. After down payment and / or trade equity of _____1137.00_____, the amount to finance is _____8429.87_____ .

Payment terms are _____36_____ months at _____326.32_____ per month at an APR of _____23.00_____ .

No representation by any Associate of Chip Ellis Motorcars, Inc., **other than written prices acknowl-edged by me as agreed to on signed sales documents, was relied on by me in making my decision to purchase this vehicle.**

Vehicles purchased for resale by Chip Ellis Motorcars, Inc. are purchased at vehicle auctions, from other dealers and from individuals, based on the inventory needs of our market of customers. **Retail prices are not determined by any published market guide. No representation as to current or future market value based on any published pricing guide was made by any Associate of Chip Ellis Motorcars, Inc.**

_____
Chip Ellis Motorcars, Inc. Witness

_____
Buyer

_____
Buyer

**EXHIBIT C**

#36A

# CHIP ELLIS MOTORCARS, INC.

## POSSIBLE ODOMETER OR TITLE DISCREPANCY

In connection with the purchase from _____ELLIS MOTOR CARS, INC._____
                                                    (DEALER)

of the motor vehicle described as follows: Year:_____2000_____ Make:__CHRYSLER__ Type:__CIRRUS__

Serial Number:_____1C3EJ56HXYN103944_____ Stock #__P5192__

Vehicles are purchased for resale by Chip Ellis Motorcars, Inc. at vehicle auctions, from other dealers and from individuals. Representations are made at the time of purchase by the seller to Chip Ellis Motorcars, Inc., on which Chip Ellis Motorcars, Inc. relies in making our representation as required on the federal odometer disclosure statement and application for title to the vehicle.

Since some vehicles are sold prior to the title being received and verified by the title clerk of Chip Ellis Motorcars, Inc., the possibility exists that the mileage statement made at the time of sale can be made in error, or correctness of information disclosed on the title application including prior damage or salvage title. If this situation arises, the parties to this contract agree that the purchaser will return the vehicle to Chip Ellis Motorcars, Inc. in like condition as purchased. Chip Ellis Motorcars, Inc. will refund the down payment paid by the customer and accept the vehicle as settlement in full for any outstanding balance on the contract. If an odometer error or title error exists, Chip Ellis Motorcars, Inc. will notify the undersigned purchaser in writing within ten working days of discovering the error. The purchaser agrees to immediately respond by returning the vehicle to Chip Ellis Motorcars, Inc. The purchasers may elect to apply paid down payment toward a similar vehicle, or by executing a waiver of the odometer or title error and acknowledge in writing the correct disclosure, elect to keep the vehicle purchased. Any trade in will be considered as actual cash value if already sold by Ellis Motorcars, which on this trade is_____. It is agreed between the parties that the purchaser waives rights to a lawsuit under the State of Alabama or federal law unless Chip Ellis Motorcars, Inc. fails to abide by the terms of the agreement.

CHIP ELLIS MOTORCARS, INC.

By _____    Date __12-31-04__

                              Purchaser _____

                              Purchaser _____

#36

# CHIP ELLIS MOTORCARS, INC.

## ACKNOWLEDGMENT OF DISCLOSURE BY DEALER
## OF DAMAGE TO MOTOR VEHICLE

In connection with the purchase from _____ ELLIS MOTOR CARS, INC. _____

(DEALER)

                                    2000        CHRYSLER        CIRRUS

of the motor vehicle described as follows: Year:_____ Make:_____ Type:_____

1C3EJ56H XYN103944                                    P5192

Serial Number: _____ Stock # _____

I, the undersigned, hereby acknowledge that Dealer has disclosed to me before I agreed to purchase said vehicle that it has been damaged as follows: **AMOUNT OF DAMAGE IS UNKNOWN. CAR HAS BEEN DAMAGED ALL OVER AND I HAVE BEEN GIVEN THE OPPORTUNITY TO HAVE THE CAR INSPECTED BY A BODY SHOP FOR ANY DAMAGE DONE TO THE CAR PRIOR TO THIS DATE, AND DO NOT HOLD CHIP ELLIS MOTORCARS, INC. LIABLE FOR ANY BODY DAMAGE AND/OR REPAIR.**

**I further acknowledge that said damage, if any, has been repaired to my satisfaction, and that no oral representations were relied on by me in making my decision to purchase this vehicle as to any prior damage to the vehicle**

        12/31/04

CHIP ELLIS MOTORCARS, INC.

By _____    Date  12-31 _____

Purchaser _____

Purchaser _____

# Ellis MotorCars, Inc.
## CONTRACT ASSIGNMENT DISCLOSURES
## AND SPOT DELIVERY AGREEMENT

It is agreed that this conditional sales contract and related documents will be assigned to Credit Acceptance Corporation (CAC) for servicing and is subject to the signed "Binding Arbitration Agreement."

Servicing means that CAC is collecting your contract for Ellis MotorCars for a small percentage of each payment.

**For the extension of credit you are required to prove your income, prove your residence, bank account, and provide other information required by CAC, including, but not limited to five references and current full coverage insurance. The approval is based on information you furnished on your application, as submitted to CAC, and must be verifiable.**

If your contract is not accepted for servicing by CAC **due to your negligence in providing required documents, current within thirty days, or disconnected phone numbers, the vehicle must be returned immediately upon notification, in like condition, as delivered to you.**

**It is understood that dealer will retain a fee of $99.00 per day plus 79¢ per mile for use of the vehicle, and this cost will be deducted from the down payment held by Ellis MotorCars, if you are negligent or delay in providing current documents or correct information and the vehicle has to be returned.**

Required documents due by _____ .

1) Current Drivers License _Ole_____

2) Current Utility Bill _more current_

3) Current Bank Statement _____

4) Current Pay Stubs _more current_

5) *Other Proof of Income _____

* _____

6) Title to Trade-in _____

7) Proof of other Income _____

8) Proof of Insurance _ole_____

9) *Co-Buyer Information _more current_

*pink mail, more

*current paystubs

Date _____

**Ellis MotorCars**

_____

**Agreed and Understood**

Buyer _____

Buyer* _____

# Ellis MotorCars, Inc.
## CONTRACT ASSIGNMENT DISCLOSURES
## AND SPOT DELIVERY AGREEMENT

It is agreed that this conditional sales contract and related documents will be assigned to Credit Acceptance Corporation (CAC) for servicing and is subject to the signed **"Binding Arbitration Agreement."**

Servicing means that CAC is collecting your contract for Ellis MotorCars for a small percentage of each payment.

For the extension of credit you are required to prove your income, prove your residence, bank account, and provide other information required by CAC, including, but not limited to five references and current full coverage insurance. The approval is based on information you furnished on your application, as submitted to CAC, and must be verifiable.

If your contract is not accepted for servicing by CAC <u>due to your negligence in providing required documents, current within thirty days, or disconnected phone numbers, the vehicle must be returned immediately upon notification, in like condition, as delivered to you.</u>

It is understood that dealer will retain a fee of $99.00 per day plus 79¢ per mile for use of the vehicle, and this cost will be deducted from the down payment held by Ellis MotorCars, if you are negligent or delay in providing current documents or correct information and the vehicle has to be returned.

Required documents due by ___12-6-04_____

1) Current Drivers License ___OK___
2) Current Utility Bill ___need___
3) Current Bank Statement ___NEED to start one___
4) Current Pay Stubs ___OK___
5) *Other Proof of Income _____
   * _____

6) Title to Trade-in _____
7) Proof of other Income _____
8) Proof of Insurance _____
9) *Co-Buyer Information ___have pay stubs___
   * ___need mail w/ Co-Buyers add___
   * _____

Date ___12-4-04_____

**Ellis MotorCars**

_[signature]_

**Agreed and Understood**

Buyer _[signature]_



**WYNN'S EXTENDED CARE, INC.**
P.O. Box 2470, Brea, CA 92822

**CONTRACT NO.: CAP** 20221061

**WYNN'S PLUS™**

## VEHICLE SERVICE CONTRACT/APPLICATION

This document is an Application for a Vehicle Service Contract. If this Application is accepted by **Us**, then it will become **Your Contract**. The words in boldface type (other than the headings in this **Contract**) are defined in the "DEFINITIONS" section below.

| CUSTOMER INFORMATION | SELLING DEALER |
|---|---|
| Name LORENE BENTLEY | Name ELLIS MOTOR CARS, INC. |
| Address P. O. BOX 780824 | Address 2225 EAST SOUTH BLVD |
| City TALLASSEE, AL 36078    State    Zip | City MONTGOMERY, AL 36110    State    Zip |
| Telephone 334-252-8702 | Telephone 334 288 7201    Dealer Account No. |

**VEHICLE INFORMATION**

| Vehicle Identification Number (VIN) 1C3EJ56HXYN103944 | Current Odometer Reading 75341 Miles (Not to exceed 150,000 miles) |
|---|---|
| Year 2000    Make CHRYSLER    Model CIRRUS    Class | Contract Price $ 1195.00 |
| Lienholder – Credit Acceptance CREDIT ACCEPTANCE CORP. | Vehicle Purchase Price $ |

**CONTRACT INFORMATION**

| Standard Deductible: $100 | CA Approval #: |
|---|---|

**COVERAGE TERM (Please check one box)**

Coverage Type: **Wynn's Plus Deluxe Coverage** 3G 36000

☐ 24 Months/ 24,000 Miles

Coverage begins on the date the **Contract** was purchased and expires upon the passing of the number of months or miles specified above, whichever occurs first. This **Contract** must be purchased on date of **Vehicle** sale.

☒ Months/ Miles

**ADDITIONAL COVERAGES** (Other than High-Tech option, must be purchased if **Vehicle** is equipped with the following — check those that apply)

☐ Vehicles with 100,001-125,000 Miles    ☐ Four Wheel Steering/Four Wheel Drive    ☐ Exotic Vehicles    ☐ Turbo/Supercharger
☐ Vehicles with 125,001-150,000 Miles    ☐ Extended Seals & Gaskets 80,001-100,000 Miles    ☐ Diesel    ☐ Current + 11 Model Years
☐ One ton/4x4/Diesel/Turbo Combined    ☐ High-Tech (Vehicles with 100,000 Miles or less ONLY)    ☐ Current + 12 Model Years

Note: Seals and gaskets are covered as part of the Wynn's Plus Deluxe Coverage if the **Vehicle** has 80,000 miles or less on the odometer at the date of its purchase. **Vehicles** with 80,001 miles or more on the odometer at the date of the purchase are not eligible unless Extended Seals and Gaskets Coverage has been purchased. Extended Seals and Gaskets Coverage may be purchased for an additional fee for **Vehicles** with less than 100,000 miles on the odometer; please see Covered Parts section for details.

**CONTRACT OBLIGOR (We, Us or Our):** Administrator

I have agreed to and acknowledge the maintenance schedule, the claims process, the coverage provided, the time and mileage limitations, the exclusions of coverage, the state law disclosures and the cancellation provisions of this Vehicle Service Contract and have read and understood said provisions. It is understood that the purchase of this Vehicle Service Contract is NOT a requirement to purchase or obtain financing. I understand that the above information may be subject to verification and that this Application may be rejected if any of the above information is incorrect or if the above **Vehicle** is not eligible for the term or coverage written as determined by the Administrator in its sole discretion.

CUSTOMER SIGNATURE 4                              AUTHORIZED REPRESENTATIVE OF SELLING DEALER

Date:                                            Date:

THIS SERVICE CONTRACT IS INSURED FOR ITS LIABILITY UNDER A SERVICE CONTRACT REIMBURSEMENT INSURANCE POLICY ISSUED BY NATIONAL CASUALTY COMPANY/SCOTTSDALE INSURANCE COMPANY, MEMBER COMPANIES OF THE Nationwide® Insurance group. IF WE DO NOT SETTLE **YOUR** CLAIM(S), AS ADMINISTRATOR WITHIN SIXTY (60) DAYS OF OUR RECEIPT OF YOUR PROOF OF LOSS, YOU MAY MAKE A CLAIM DIRECTLY AGAINST: NATIONAL CASUALTY COMPANY/SCOTTSDALE INSURANCE COMPANY, P.O. BOX 4110, SCOTTSDALE, AZ 85268 (800) 423-7675.

**IMPORTANT:** Before beginning any repair work on **Your Vehicle**, call Wynn's Extended Care at 1-800-901-6182

NATL ACCT 276 (Rev. 3/04)

# RETAIL INSTALLMENT CONTRACT

| BUYER(S) | CREDITOR-SELLER |
|---|---|
| NAME   LORENE BENTLEY | NAME   TOM BROWN FORD |
| NAME   CHRISTOPHER TRATLOR | ADDRESS   720 EAST MAIN ST. |
| ADDRESS   P.O. BOX 730824 | CITY   MONTGOMERY   STATE   AL   ZIP |
| CITY   TALLASSEE   STATE   AL   ZIP   36078 | ACCOUNT NO. |

"You" and "Your" mean each Buyer above, jointly and severally. "Us", and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown below as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under this Retail Installment Sale Contract ("Contract"), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures below. You also agree to the terms and conditions below (including the Truth in Lending Disclosures) and on the reverse side of this Contract.

| New or Used | Year and Make | Model and Body Style | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| USED | 2000 CHRYSLER | CIRRUS 4DR | WHITE | 1C3EJ56H1YN164464 | |

## TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | Amount Financed The amount of credit provided to You or on Your behalf. | Total of Payments The amount You will have paid after You have made all payments as scheduled. | Total Sale Price The total cost of Your purchase on credit, including Your downpayment of |
|---|---|---|---|---|
| 23.89 % | $  3317.65 | $  6424.02 | $  9741.67 | $ 1200.00 is $ 10941.67 |

**Payment Schedule:** Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 35 | $  326.12 | JANUARY 25   2003   and same date of each following month. |

### Insurance
Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless You sign and agree to pay the additional cost. The term of the insurance shall be the same as the term of Your Contract.

| Type | Premium | Signature | |
|---|---|---|---|
| Credit Life | $  N/A | _Signature of Buyer Requesting Only Life Insurance_ | Age |
| | | _Signature of Buyer Requesting Only Life Insurance_ | Age |
| Credit Disability | $  N/A | _Signature of Buyer Requesting Life and Disability Insurance_ | Age |

**Security:** You are giving a security interest in the goods or Vehicle being purchased.
**Late Charge:** If a payment is more than 10 days late, You will be charged 5% of the payment or $10, whichever is greater, not to exceed $100.
**Prepayment:** If You pay off early, You may be entitled to a refund of part of the Finance Charge.
**Additional Information:** See below and the other side of this Contract for any additional information about nonpayment, default and any required repayment in full before the scheduled date, and prepayment refunds and penalties.

## ITEMIZATION OF AMOUNT FINANCED

| | | | | |
|---|---|---|---|---|
| 1. | Cash Price (including accessories and improvements to the Vehicle) .................................................... | | $ | (1) |
| 2. | Sales Tax ..................................................................................................................................................... | | $ | (2) |
| 3. | Down-Payment Calculation:   **Cash Down Payment** ................................ $ 1200.00 (A) | | | |
| | Trade-In Description:   Gross Trade-In ............. $ N/A (B) | | | |
| | Make: _N/A_   Payoff Made by Seller | | | |
| | Model: _N/A_   to: ___ $ N/A (C) | | | |
| | Net Trade-In (If negative number, insert "0" in line 3(D) and itemize difference in 5(G) below) (B-C) $ 0.00 (D) | | | |
| | **Total Down Payment** ...........................................(A + D) $ | | | (3) |
| 4. | Unpaid Balance of Cash Price (1 + 2 less 3) ......................................................................................... | | $ | (4) |

5.  Other Charges Including Amounts Paid to Others on Your Behalf:
    *(NOTICE: A portion of these charges may be paid to or retained by Us.)
    A.  Cost of Required Physical Damage Insurance Paid to Insurance Company* ............................ $_____(A)
    B.  Cost of Optional Extended Warranty or Service Contract Paid to _____ ........ $_____(B)
    C.  Cost of Optional Credit Life Insurance Paid to Insurance Company* ..................................... $_____(C)
    D.  Cost of Optional Credit Disability, Accident and Health Insurance Paid to Insurance Company* ...... $_____(D)
    E.  Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest ....... $_____(E)
    F.  Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration .................. $_____(F)
        Other Charges (Seller must identify who will receive payment and describe purpose)*
    G.  to _____ for lien or lease payoff ....................................... $_____(G)
    H.  to _____ for Optional GAP Protection Insurance ......... $_____(H)
    I.  to  ELLIS MOTOR CARS, INC.  for  DOCUMENTARY FEE ................. $_____(I)
        Total of Other Charges and Amounts Paid to Others on Your Behalf ..................................... $_____(5)
6.  Less Prepaid Finance Charge ................................................................................................. $_____(6)
7.  Amount Financed - Unpaid Balance (4 + 5 less 6) ...................................................... $_____(7)

**PROPERTY INSURANCE:** You must insure the Vehicle securing this Contract. **You may purchase or provide the insurance through anyone You choose** who is reasonably acceptable to Us. The collision coverage deductible may not exceed $500. If You get insurance from or through Us, You will pay $_____ for _____ of coverage. The premium is as follows:

☐ $_____ N/A  Deductible, Collision Coverage          $_____ N/A
☐ $_____ N/A  Deductible, Comprehensive Coverage      $_____ N/A
☐ Fire-Theft and Combined Additional Coverage          $_____ N/A
☐                                                       $_____ N/A

## LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by initialing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional warranty or service contract for details about coverage and duration.

Optional Extended Warranty or Service Contract Price $_____    Your Initials _____    Term: _____    Company _____

**GAP PROTECTION INSURANCE:** Optional Guaranteed Auto Protection Insurance (GAP) is not required to obtain credit. GAP protection insurance will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 5H of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection insurance from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the insurance will describe the terms and conditions of coverage in further detail. If You want GAP protection insurance, sign below.

Cost: $_____    Term: _____    Provider: _____

_____    _____    _____    _____
Buyer's Signature              Date         Buyer's Signature              Date

**ARBITRATION NOTICE: PLEASE SEE THE REVERSE SIDE OF THIS CONTRACT FOR INFORMATION REGARDING THE ARBITRATION AGREEMENT AND JURY WAIVER CONTAINED IN THIS CONTRACT.**

**ADDITIONAL TERMS AND CONDITIONS:** THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE ARBITRATION AGREEMENT AND JURY WAIVER SET FORTH ON THE REVERSE SIDE HEREOF ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

**NOTICE TO BUYER: 1. Do not sign this Contract in blank. 2. You are entitled to 1 true copy of the Contract You sign without charge. 3. Keep it to protect Your legal rights.**

**You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with all blanks filled in and that You have read it and understand it.**

**CAUTION—IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Buyer's Signature: x _____    Buyer's Signature: x _____
Seller: ELLIS MOTOR CARS, INC.    By: _____    Title: Manager
This Contract is signed by the Seller and Buyer(s) hereto this _____ day of _____

**NOTICE OF ASSIGNMENT:** The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth on reverse side of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD-SUITE 3000, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller: ELLIS MOTOR CARS, INC.    By: _____    Title: Manager

ALABAMA CREDIT ACCEPTANCE CORPORATION (7-04)

SELLER COPY

# CHIP ELLIS MOTORCARS, INC.

# ARBITRATION AGREEMENT

### (Dispute Resolution)
### The Undersigned further acknowledges and agrees as follows:

Buyer/lessor acknowledges and agrees that the vehicle purchased or leased herein has traveled in interstate commerce. Buyer/lessor thus acknowledges that the vehicle and other aspects of the sales or lease transaction are involved in, affect, or have a direct impact upon, interstate commerce.

**Buyer/lessor and dealer agree that all claims, demands, disputes or controversies of every kind or nature** that may arise between them concerning of the negotiations leading to the sale or lease of the vehicle, terms and provisions of the sale or lease arrangements for financing, purchase of insurance, purchase of extended warranties or service contracts, the performance or condition of the vehicle, or any other aspects of the vehicle and its sale or lease **shall be settled by binding arbitration conducted pursuant to the provision of 9 U.S.C. Section 1 et. seq. and according to the Commercial Rules of the American Arbitration Association.** Without limiting the generality of the foregoing, it is the intention of the buyer/lessor and the dealer to resolve by binding arbitration all disputes between them concerning the vehicle, its sale or lease, and its condition, including disputes concerning the terms and conditions of the sale or lease, the condition of the vehicle, any damage to the vehicle, the terms and meaning of any of the documents signed or given in connection with the sale or lease, any representations, promises or omissions made in connection with negotiations for the sale or lease of the vehicle, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance and vehicle extended warranty or service contract purchased or obtained in connection with the vehicle.

**Either party may demand arbitration by filing the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for arbitration shall simultaneously be served upon the other party. The buyer/lessor and the dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where dealer's facility is located.**

THE UNDERSIGNED HAS READ, UNDERSTOOD AND AGREES TO BE BOUND BY THE PROVISIONS, COVENANTS AND AGREEMENTS SET FORTH HEREIN ABOVE.

Date  12-31-04

Dealer Signature _____

Buyer/Lessor Signature _____

Buyer/Lessor Signature _____

**EXHIBIT C**