IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DONTE TONEY, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | |
| DAIMLERCHRYSLER CORPORATION, ) | 3:07-cv-73-MEF-WC |
| a corporation, CHIP ELLIS CARS ) | |
| AMERICA INCORPORATED, a ) | |
| corporation, CHIP ELLIS, INC., a ) | |
| corporation, ) | |
| ) | |
|     Defendants. ) | |

## DAIMLERCHRYSLER'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Petitioner DaimlerChrysler Corporation ("DCC"), formerly Chrysler Corporation, Defendant in the above-styled action, herein opposes Plaintiff's motion to remand this case back to Macon County, Alabama. In support of its opposition, DCC states as follows:

### I. Federal Officer Removal Is Appropriate.

#### A. Plaintiff Responds To Arguments DCC Has Not Made.

Plaintiff spends the first twenty-three (23) pages of its brief, thousands of words, and a half hour of the reader's time completely missing the point of DCC's federal officer removal argument. Plaintiff's Brief in Support of Remand ("Brief") responds to arguments that DCC has not made, and fails completely to address the arguments that it has made. Here, DCC is entitled to federal officer removal because of Plaintiff's wanton failure to warn claim on the basis that it

has a plausible federal defense to that claim.[1] (Notice of Removal, pp. 6-10). DCC does not contend that Plaintiff's claims are preempted, as Plaintiff appears to believe. (Brief, pp. 22-24). Nor does DCC contend that its mere compliance with a federal regulation confers federal officer jurisdiction, as Plaintiff protests, (*id.*, pp. 6-10; *passim*), or that it took actions pursuant to a contract with the federal government, as Plaintiff counters (*id.*, pp. 7-8). While Plaintiff provides ample authority in support of his contention that "participation in a regulated industry is insufficient for removal," he fails to identify any cases addressing DCC's more specific and limited basis for removal.

Plaintiff's argument, and the cases cited in support of it, center around Plaintiff's <u>correct</u> contention that mere compliance with regulations such as the FMVSS does not provide a defense to a claim that the product is <u>defective</u>. Of course, that is true. DCC does not dispute it. That point is sharpened by the existence of an Alabama Pattern Jury Instruction that says just that. *See* A.P.J.I. 32.24. However, Plaintiff has not made <u>only</u> a products liability claim. Additionally, he has made a claim for <u>wanton</u> failure to warn, a qualitatively different claim than his "products" claim, and it is that claim, and the defense to it afforded by the FMVSS that affords federal officer removal jurisdiction.

DCC's position is that, in the course of determining whether and how to warn of alleged hazards associated with the particular roof design at issue here, DCC followed the federal government's particularized mandates regarding the testing of the roof. While following these standards may not provide a defense to a products claim, it does provide a federal defense to wantonness because of the special scienter aspect of wantonness. In other words, any determination as to whether DCC acted with the specific knowledge required for wantonness

---

[1] Of course, as noted in DCC's Notice of Removal, if federal officer removal jurisdiction exists as to one claim, it allows for removal of the <u>whole</u> controversy (Notice of Removal, p. 10).

must be made against the backdrop of the federal mandate it was acting under at the time the warnings-based conduct Plaintiff complains of occurred. Wantonness is distinct from a products liability claim. Under Alabama law it requires a specific and heightened scienter and rests on DCC's knowledge and subjective appreciation of risk. *See Martin v. Arnold*, 643 So. 2d (1988)(noting that to establish wantonness, the Plaintiff must prove that the Defendant, with reckless indifference to the consequences, consciously or intentionally did some wrongful act or omitted some known duty); *South Central Bell Tel. Co. v. Branum*, 568 So. 2d 795, 796 (Ala. 1990)("Unlike negligence, which involves inadvertence, wantonness involves premeditation or formed intention.") *quoting Lynn Strickland Sales & Service, Inc. v. Aero-Lane Fabricators, Inc.*, 510 So. 2d 142, 145 (Ala. 1987).

Plaintiff's wantonness allegations go beyond mere negligence and compliance with some standard of care. They go directly to the state of mind with which DCC acted when it made the warnings decision that it did. If Plaintiff is allowed to hinge its wantonness claim on DCC's state of mind, then DCC must be allowed to hinge its defense on the federal mandates that DCC acted under. This constitutes the "plausible federal defense" required and this Court has jurisdiction.

**B.  FMVSS 208's Particularized Mandate Concerning The Testing of the Roof Constitutes A Plausible Federal Defense, Even Though It Does Not Preempt Plaintiff's Claims.**

The crux of Plaintiff's opposition to removal is based on its misunderstanding of DCC's argument. DCC does not contend that its compliance with FMVSS 216 *preempts* the Plaintiff's wantonness claim or prevents the wholesale imposition of liability for the roof design. Plaintiff is correct that preemption is an affirmative defense that DCC has not raised. Plaintiff is incorrect, however, in limiting federal officer removal to federal preemption. While federal

preemption is *one* federal defense by which federal officer removal could travel, Plaintiff has not identified any authority indicating that it is the *only* such defense. Indeed, DCC has seen nothing to indicate that the particular defense of federal preemption is required, so long as a federal defense is implicated. And a federal defense is implicated here. DCC asserts that in connection with the testing which accompanied the roof design of the 2000 Chrysler Cirrus, it acted in precise conformity with NHTSA's detailed mandates. DCC selected the particular roof design that the Plaintiff now challenges as a safe option on the basis of its performance during the rigors of the testing mandated by NHTSA. DCC's thought processes were informed at every stage by FMVSS 206 and its federally mandated requirements.

This is DCC's defense to the wantonness claim. It is created by a federal statute, namely, the Safety Act, 49 U.S.C. §30101, and will necessitate an interpretation, application, and examination of federal law, namely, FMVSS 216, 49 CFR§571.216. It cannot therefore be considered anything *but* a federal defense.[2] In fact, Eleventh Circuit has recognized a defense to a claim of wantonness in a manufacturer's compliance with federal regulations, as DCC did in this case. *Richards v. Michelin Tire Corp.*, 21 F.3d 1048, 1058-1059 (11th Cir. 1994)(finding that where the National Highway Traffic Safety Administration did not require additional warnings, the manufacturer cannot be seen as wanton even though more could have been done). Thus, DCC has a colorable federal defense, and its ultimate merits need not be demonstrated at this juncture. *See McMahon v. Presidential Airways, Inc.*, 410 F.Supp.2d 1189 (M.D. Fla.

---

[2] DCC has met the second element for federal officer removal, as well, because a causal connection exists between its federally-imposed testing duties and the claims against it here. *See Magnin*, 91 F.3d at 1427. As DCC set forth in its Notice of Removal, it was required to subject the roof design at issue here to the tests laid out FMVSS 216. It did so and because it did so, it determined that no warnings were necessary. This determination is precisely what the Plaintiff is now suing DCC for. Accordingly, there is a direct causal connection between DCC's federally-mandated duties and the Plaintiff's claims.

2006); *Jefferson County, Alabama v. Acker*, 527 U.S. 402, 206 (1999). Indeed, federal officer removal flips the typical fraudulent joinder removal analysis on its head – here, the presumption favors <u>removal</u> and the <u>defense</u> need not be a winning one, but merely a plausible one. (Notice of Removal, pp. 6-9).

### C. The Burden of Proof Regarding Federal Officer Removal Is Satisfied.

Plaintiff's assertions regarding the well-pleaded complaint rule and the applicable burden of proof for the instant motion are not well-taken. The federal officer removal statute is not like other removal statutes. It is to be broadly construed and generously viewed. *Durham v. Lockheed Martin Corp.*, 445 F.2d 1247, 1251 (9th Cir. 2006). Plaintiff's assertions regarding the presumption favoring remand therefore do not apply. Again, there is a <u>presumption favoring removal</u>. Moreover, federal officer removal is an *exception* to the well-pleaded complaint rule. *Acker*, 527 U.S. 431-32. It confers federal jurisdiction *despite* the absence of a federal issue on the face of the complaint. *See* 14C Wright, Miller, Cooper & Steinman, *Federal Practice and Procedure*, §3727; *Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 939 (E.D.N.Y. 1992).

Under this standard, DCC has met its burden for federal officer removal and the Plaintiff's motion to remand should be denied.

### II. Alternatively and Additionally, Chip Ellis Cars America, Inc. and Chip Ellis, Inc. ("Chip Ellis") are Fraudulently Joined, and the Only True Parties to This Action Are of Diverse Citizenship.

At the heart of Plaintiff's case is a criticism of the design choices DCC made with respect to the subject vehicle. Those choices were made by DCC, informed by its testing and experience and the standards developed and enforced by the federal government. Chip Ellis, a used car dealer, played no role in that process. Yet, Plaintiff would have this Court deprive DCC of the federal forum to which it is entitled by fraudulently joining in this case a used car dealership which merely sold a used 2000 Chrysler Cirrus to two individuals other than the Plaintiff –

5

Lorene Bentley and Christopher Traylor. (Notice of Removal, Ex. B., ¶ 4). This is a used car lot which has been proven by uncontroverted evidence to have played no role in any alleged defect. Such a result would defy logic and fundamental fairness.

Plaintiff has further sought to evade federal jurisdiction by joining his product liability claims against DCC with untenable claims against the in-stated used car dealership. Plaintiff's argument and protestations are nothing more than an attempt to "muddy the waters" and divert this Court from the pertinent issues involved in this removal, including the "countervailing concern that dictates that a federal court be 'cautious about remand, lest it erroneously deprive defendant of the right to a federal forum.'" *See Bolling v. Union National Life Ins. Co.*, 900 F.Supp. 400, 405 (M.D. Ala. 1995), *citing* 14A Wright, Miller & Cooper, *Federal Practice & Procedure* § 3721, p. 218-19 (1985).

As the United States Supreme Court has long recognized, a Defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential Defendant having no real connection to the controversy." *Wilson v. Republic Iron & Steel Co.,* 257 U.S. 92, 97 (1921). The U.S. Supreme Court could have had Chip Ellis in mind when it authored that phrase "...no real connection to the controversy." As detailed below, Chip Ellis did not design or manufacture the subject car. It had no contact or relationship with Plaintiff. It merely sold a used product that it did not alter or change in any manner to individuals other than the Plaintiff. (Notice of Removal, Ex. B., ¶ 4). No rational argument can be constructed to give this used car lot a "real connection" to Plaintiff's claims in this case. It exists in this case for only one reason – it's Alabama citizenship.

When a plaintiff disputes a fraudulent joinder claim in a motion to remand, the court should "pierce the pleadings" and examine the facts and state law applicable to the Plaintiff's

6

claim. *Keating v. Shell Chemical Co.*, 610 F.2d 328, 331 (5th Cir. 1980); *Ironworks Unlimited v. Purvis*, 798 F. Supp. 1261 (S.D. Miss. 1992); *see also* 32A Am.Jur.2d *Federal Courts* § 1630 (1995) ("When the issue of fraudulent joinder is raised, a court may look to the entire record and any means available to determine the propriety of the joinder."). The court may consider the outcome of similar Alabama cases, as well as the entire record at the time of remand. *Mask*, 825 F. Supp. at 288; *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983).

In this case, the citizenship of Chip Ellis must not defeat the diversity of citizenship which otherwise exists. First, Chip Ellis need not join or consent to the removal of the present action; 28 U.S.C. § 1446 only requires the consent of Defendants <u>properly joined and served</u> in an action. Second, the complaint fails to state a cause of action against Chip Ellis. Therefore, because the Plaintiff has fraudulently joined Chip Ellis, complete diversity exists under 28 U.S.C. § 1332, and Plaintiff's Motion for Remand should be denied.

**A. Removal Based on Diversity Jurisdiction Does Not Require the Written Consent of Fraudulently Joined Defendants.**

Though the general rule under 28 U.S.C. § 1446 requires the joinder and consent of all Defendants in a petition of removal based on diversity jurisdiction, the rule only applies to those Defendants <u>properly joined and served</u> in a removed action. First, as made clear by Plaintiff's recent petition for this Court to serve Chip Ellis, they were not properly <u>served</u> at the time of removal. Moreover, it is well established that where a Defendant removes a case based on the fraudulent joinder of nondiverse Defendants, the notice of removal does not require consent of the fraudulently joined Defendants, nor any explanation regarding the absence of consent. "Unless and until the case is remanded it is not necessary that a fraudulently or improperly joined Defendant join with the other Defendants in a petition for removal." *Clay v. Brown Williamson Tobacco Corp.*, 77 F.Supp.2d 1220, 1223 fn. 3 (M.D. Ala. 1999), *citing Erkins v. American*

7

*Bankers Ins. Co. of Florida*, 866 F.Supp. 1373, 1375 (N.D. Ala. 1994). In cases involving the alleged improper or fraudulent joinder of parties, application of the general rule requiring consent by all Defendants is nonsensical, for removal in such cases is based on the contention that no other proper Defendants exist. *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812 (5th Cir. 1993). DCC has removed the present action based on the fraudulent joinder of Chip Ellis. Thus, only the consent of DCC was necessary for removal, and DCC has met all procedural requirements under 28 U.S.C. § 1446. The real issue before this Court is Plaintiff's attempt to deprive DCC of its rightful federal forum through the fraudulent joinder of a sham Defendant.

**B.     The Complaint Fails to State a Cause of Action Against Chip Ellis in this Case.**

Contrary to the Plaintiff's assertions, in order to determine whether Chip Ellis is fraudulently joined, this Court should look outside of the face of the Plaintiff's Complaint. Indeed, Eleventh Circuit precedent makes clear that, in conducting a fraudulent joinder inquiry, a district court may "look beyond the face of the complaint" in order to ascertain whether a Plaintiff's claims are "obviously fraudulent or frivolous." *Crowe*, 113 F.3d at 1542 (adopting summary judgment-type procedures, but not substantive analysis, for fraudulent joinder, and considering affidavits and other extra-pleading materials in that endeavor); *Davis ex rel. Estate of Davis v. General Motors Corp.*, 353 F.Supp.2d 1203, 1207 n. 5 (M.D. Ala. 2005)(explaining that fraudulent joinder argument is evaluated by Rule 56-style procedures, pursuant to which court may consider complaint, as supplemented by affidavits and other factual submissions by the parties).

Hence, the Court is not limited to the face of the Plaintiff's Complaint as with a Rule 12(b)(6) motion, and the Court should take all evidence before the Court in order to determine whether diversity jurisdiction exists. As shown by the law discussed herein, as well as the

evidence submitted before the Court, Plaintiff has not stated a viable cause of action against Chip Ellis in the present case.

### 1. Products liability under the AEMLD does not extend to sellers of used vehicles in an "as is" condition.

The Plaintiff claims that Chip Ellis is liable under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"), Ala. Code § 6-5-521. Although sellers may, under certain circumstances, be liable under the AEMLD, Plaintiff fails to state a legitimate cause of action against Chip Ellis in this case. The 2000 Chrysler Cirrus involved in this case was a used vehicle sold in an "as is" condition, and Chip Ellis, as seller of the vehicle, may not be held liable for any alleged design defects under the AEMLD.

A majority of courts in this country have refused to apply strict liability in tort against sellers of used products. *See, e.g., Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 77 Md. App. 41, 549 A.2d 385 (1988) (refusing to apply strict liability for an alleged manufacturing defect); *Masker v. Smith*, 405 So. 2d 432 (Fla. App. 1981) (refusing to apply strict liability for latent defect); *La Rosa v. Superior Ct., Santa Clara County*, 122 Cal. App. 3d 741, 176 Cal. Rptr. 224 (1981); *Peterson v. Lou Bachrodt Chevrolet Co.*, 61 Ill. 2d 17, 329 N.E. 2d 785 (1975); *Pridgett v. Jackson Iron and Metal Co.*, 253 So. 2d 837 (Miss. 1971); *Crandall v. Larkin & Jones Appliance Co.*, 334 N.W.2d 31 (S.D. 1983). *See also* Edward C. Martin, *Alabama's Extended Manufacturer's Liability Doctrine (AEMLD)*, 13 Am. J. Trial Ad. 983, 1072 (1990) (citing cases refusing to apply strict liability to used products dealers). The policies underlying the AEMLD dictate that Alabama courts should follow the majority of strict liability states and refuse to impose liability on sellers of used products under the AEMLD. First, the risk-spreading rationale for the AEMLD is not compelling with respect to the sellers of used products. *See, e.g., Tillman v. Vance Equip. Co.*, 286 Or. 747, 596 P.2d 1299 (Or. 1979). Although dealers in used

goods may be able to compensate parties injured by their products and allocate this cost to their customers, such a function is inconsistent with the nature of the used goods market. *Id.* at 1303-04. Furthermore, "the sale of a used product, without more, may not be found to generate the kind of expectations of safety that the courts have held are justifiably created by the introduction of a new product into the stream of commerce." *Id.* at 1304. Finally, "[t]he dealer in used goods generally has no direct relationship with either manufacturers or distributors. Thus, there is no ready channel of communication by which the dealer and the manufacturer can exchange information about possible dangerous defects in particular product lines or about actual and potential liability claims." *Id.*

The ruling in *Treadwell Ford, Inc. v. Dairyland Ins. Co.*, 485 So. 2d 312 (Ala. 1986), suggests that AEMLD liability should not be imposed on used car dealers. In *Treadwell Ford*, the court refused to extend liability under the AEMLD to the insurer of a wrecked vehicle that had been sold as salvage, subsequently repaired and resold as a used vehicle. The court reasoned that the Defendant insurer was "too far afield of the sellers in the chain of marketing a <u>new</u> product to be reached by the Alabama Extended Manufacturers' Liability Doctrine." *Id.* at 318 (emphasis added).[3] Under this same analysis, no AEMLD liability attaches to Chip Ellis's sale of a used vehicle in an "as is" condition.

> 2. **No causal relation exists between the used car dealer's handling of the 2000 Chrysler Cirrus and the alleged defective condition, and thus Plaintiff's AEMLD claim fails.**

Even if the Court holds that AEMLD liability applies to used products dealers, the Plaintiff's AEMLD claims against Chip Ellis as a seller are not valid. The facts in this case are

---

[3] In *Treadwell*, the court admittedly upheld a general verdict entered against the used vehicle seller in favor of the plaintiff; however, the court explicitly declined to address the seller's argument that the AEMLD did not apply to sellers of used vehicles. Instead, the court simply explained that the verdict could have been sustained on other theories and that the seller had not preserved the AEMLD argument for appeal.

clear that this used car dealership's actions lacked any causal relation to this alleged defect. In order for a seller to be liable under the AEMLD, the seller must have <u>actively</u> contributed to the placing of an allegedly defective product into the stream of commerce. *See Atkins v. American Motors Corp.*, 335 So.2d 134, 143 (1976). It is well established in Alabama that a seller is not liable under the AEMLD if no causal relation exists between the seller's handling of an allegedly defective product and its allegedly defective condition. *See, e.g., Atkins*, 335 So. 2d at 143; *Casrell v. Altec Indus.*, 335 So. 2d 128, 134 (Ala. 1976); *Caudle v. Patridge*, 566 So. 2d 244 (1990). In order to invoke the "causal relation" defense, the Defendant may show that he is in the business of either distributing or processing for distribution finished products; he received a product already in a defective condition; he did not contribute to this defective condition; he had neither knowledge of the defective condition, nor an opportunity to inspect the product which was superior to the knowledge or opportunity of the consumer. *Atkins*, 335 So.2d at 143. *Accord Hicks v. Vulcan Engineering Co.*, 749 So. 2d 417 (Ala. 1999); *Casrell*, 335 So. 2d at 134.

This causal relation defense has been established. In unrefuted affidavit testimony, Leven H. Ellis, IV testifies that Chip Ellis Cars only sells used, finished vehicles and does not alter them prior to sale. (Notice of Removal, Ex. B, ¶¶ 6-9). Chip Ellis Cars does not design or manufacture vehicles (*id.*), nor does it perform any mechanical service or repair work to the vehicles prior to selling them. (*Id.* at ¶ 9). Because Chips Ellis Cars does not alter the vehicles, but merely passes them on as he finds them, any alleged defect in the subject vehicle would have been present at the time the Plaintiff first received the vehicle. (*Id.* at ¶ 10). Furthermore, Chip Ellis Cars has never had knowledge of any defective condition in the vehicle prior to its sale, nor has he had an opportunity to inspect the vehicle that was superior to the knowledge or opportunity of any purchaser. (*Id.*).

Moreover, Plaintiff implies that whether Chip Ellis meets the causal relation requirements is purely a question of fact that precludes the removal of this case. This argument, however, fails to recognize the Alabama Supreme Court's holding in *Consolidated Pipe & Supply Co. v. Stockham Valve & Fitting*, 365 So. 2d 968 (Ala. 1978), that when an alleged defect in a product is a latent defect, so as not to be discoverable upon a reasonable examination by either the retail seller or the buyer, the "causal relation" defense shields the innocent retailer from all liability under the AEMLD. *Id.* at 971. Specifically, the court stated:

> The "superior opportunity" [to inspect the allegedly defective product] must be a meaningful one. If the defect was latent and could not have been discovered by either consumer or distributor by a reasonable inspection, neither had a superior opportunity.

*Id.*

Chip Ellis clearly fits within the *Consolidated Pipe* defense. A roof's propensity to collapse in the event of a crash clearly would be a latent defect that would not be discoverable upon a reasonable inspection. The crashworthiness of a vehicle involves factors not discernable upon a visual inspection of the vehicle. Accordingly, Chip Ellis should be free from any liability under the AEMLD.

### 3. Chip Ellis does not have the duty to discover and warn customers about latent defects.

Under Alabama law, a retailer "ordinarily is under no duty to test articles to discover latent defects, or hidden dangers." *Kroger Co. v. Goodhew*, 281 Ala. 637, 641, 206 So. 2d 882 (1968). *See also Lindsey v. International Shoe Co.*, 45 Ala. App. 566, 233 So. 2d 507 (1970). Courts repeatedly have held that used car sellers have no duty to discover and warn purchasers of latent defects in used automobiles. *See, e.g., Masker v. Smith*, 405 So. 2d 432, 433-44 (Fla. Ct. App. 1981) ("[W]e are not aware to any duty on [used car] dealer[s] to discover latent defects which by their very nature could not be discovered by a reasonable and customary inspection");

12

*Stump v. Indiana Equipment Co., Inc.*, 601 N.E.2d 398 (Ind. Ct. App. 1992) (dealer's "duty of reasonable care did not require that it inspect, discover, and warn of the hidden defect"); *Ryals v. Billy Poopell, Inc.*, 192 Ga. App. 787, 386 S.E.2d 513 (1989).

In this case, the alleged manufacturing defects are clearly latent defects that could not be discovered through a reasonable inspection by Chip Ellis. The crashworthiness of a vehicle, as discussed above, is based on numerous complex factors not discernable upon visual inspection. Thus, the Plaintiff's failure to warn, negligence and wantonness claims are completely unfounded in law.

### 4. Plaintiff cannot prove the existence of any common law duty flowing from Chip Ellis to support his claims against them.

Moreover, the lack of any causal relationship renders Plaintiff's claims against Chip Ellis fatal. As the Alabama Supreme Court stated in *Ledbetter v. United Am. Ins. Co.*:

> Whether there is a duty is the threshold inquiry in a negligence case. "It is settled that for one to maintain a negligence action the defendant must have been subject to a legal duty." *Morton v. Prescott*, 564 So.2d 913, 915 (Ala. 1990). "The trial court must determine whether a duty existed and, if so, the extent of that duty." *Perkins v. Dean*, 570 So.2d 1217, 1220 (Ala. 1990).... "The ultimate test of the existence of a duty to use due care is found in the foreseeability that harm may result if care is not exercised." *Buchanan v. Merger Enterprises, Inc.*, 463 So.2d 121, 126 (Ala. 1984).

624 So.2d 1371, 1373 (Ala. 1993). There is no evidence before this Court of any duty owed by Chip Ellis to Plaintiff. In fact, Plaintiff did not buy this vehicle from Chip Ellis and had no dealings with Chip Ellis. (Notice of Removal, Ex. B, ¶¶ 4, 13). Because there is no relationship between Plaintiff and Chip Ellis, Plaintiff cannot prove the existence of any common law duty flowing to Plaintiff from Chip Ellis. Therefore, there is no possibility that Plaintiff can prove a cause of action for his negligence/wantonness and negligent/wanton failure to warn claims against Chip Ellis.

### C. Chip Ellis's Fraudulent Joinder Has Been Established By Uncontroverted Evidence.

Plaintiff contends that Chip Ellis is not fraudulently joined because there are potential facts, which <u>might</u> establish a cause of action against the resident Defendants in state court that could be learned through discovery. Plaintiff asserts that he cannot adequately contest the removal action without discovery, and that, therefore, the case should be remanded to state court to allow discovery to begin. However, such a result is not necessary here. United States District Judge Myron Thompson, of the Middle District of Alabama, has addressed such a situation before and handled it accordingly:

> The question then is how should a court assess factual allegations for fraudulent joinder when there has not been a full opportunity for discovery. ...
>
> The court believes that, because a fraudulent-joinder charge based on lack of evidence raises a concern already addressed by Rule 11 – that is, that a plaintiff may have good reason to believe that a fact is true but may need discovery to confirm the fact – Rule 11's standard should apply to such a charge. Therefore, to block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

*Sellers v. Foremost Ins. Co.*, 924 F.Supp. 1116, 1118-19 (M.D. Ala. 1996).

Here, Plaintiff has failed to provide any evidentiary support for his accusations. In stark contrast, Chip Ellis has submitted evidence that it did not manufacture, recondition, or alter the subject vehicle in any way. Any alleged defect was present when Chip Ellis received the vehicle, and it was unaware of any such defect. Nor did Chip Ellis have <u>any</u> relationship with Plaintiff. *See Wright v. Metropolitan Life Ins. Co.*, 74 F.Supp.2d 1150, 1153-54 (N.D. Ala. 1999); *see also, Sellers v. Foremost Ins. Co.*, 924 F.Supp. 1116 (M.D. Ala. 1996) (remand

14

denied where Plaintiff had no evidence that supports, or is likely to lead to evidence that supports, a viable claim against the non-diverse defendant); *Anderson v. Allstate Life Ins. Co.,* 2001 WL 228057 at *8-10 (denying remand where Plaintiffs lacked a reasonable basis for predicting that the state law *might* impose liability on the facts involved).

Plaintiff's speculation that potential facts or evidence <u>might</u> be found in discovery is insufficient to defeat the removal of this action to federal court.[4] As the Eleventh Circuit has stated:

> The potential for legal liability "must be reasonable, not merely theoretical." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). In considering possible state law claims, possible must mean "more than such a possibility that designated residence can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role." *Braden v. Wyeth*, CV-04-PT-235-E (N.D. Ala. June 30, 2004).

*Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th 2005). The unrefuted affidavit by Levin H. Ellis, IV must be considered by the court (*Id.*). It establishs that a claim could not be made against the Chip Ellis, so its joinder is without basis and, therefore, removal of this case is proper.

## CONCLUSION

Jurisdiction in this Court is appropriate pursuant to 28 U.S.C. §1442(a)(1) because DCC has a "colorable federal defense" to Plaintiff's wanton failure to warn claim. Alternatively and

---

[4] While discovery is not necessary as the uncontroverted evidence supports a finding that Chip Ellis was fraudulently joined, DCC would not object to the Court's deferring ruling on this motion for 60 days to allow plaintiff to obtain discovery on the limited issue of the role of Chip Ellis with respect to the alleged defect. *See Bolling v Union National Life Ins. Co.*, 900 F.Supp. 400, 405 (M.D. Ala. 1995) (diversity jurisdiction is granted by Congress and a court should be cautious before granting a remand, so that it does not erroneously deprive a defendant is right to a federal forum); *See also Harrell v. Farm Credit Northwest Florida, ACA*, Slip Copy, 2006 WL 3507949 at *2 (M.D. Fla. 2006).

additionally, jurisdiction is appropriate pursuant to 28 U.S.C. §§ 1332 because diversity of citizenship exists among the parties properly joined in this lawsuit and the case was properly removed by DCC pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1442(a)(1), and 1446. For the foregoing reasons, Defendant DaimlerChrysler Corporation respectfully requests that the Court deny the Plaintiff's Motion to Remand. Alternatively, if the Court is reluctant to so deny Plaintiff's motion, DCC asks this Court to defer its ruling and impose a 60 day discovery period to conduct limited discovery on the issue of the used car dealership's involvement with the alleged defect in the vehicle.

/s/ Natasha L. Wilson
One of the Attorneys for Defendant
DaimlerChrysler Corporation

OF COUNSEL:
Michael L. Bell (BELLM6182)
J. Chandler Bailey (BAILC4526)
Natasha L. Wilson (WILSN6654)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200
(205) 581-0700
(205) 581-0799 (fax)

## CERTIFICATE OF SERVICE

      I hereby certify that on this 16th day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to:

Thomas P. Willingham
ALVIS & WILLINGHAM, LLP
Suite 475
Birmingham, AL 35242
*Attorney for Plaintiff*
twillingham@alvisandwillingham.com

Walter E. McGowan
GRAY, LANGFORD, SAPP, MCGOWAN, GRAY & NATHANSON
P.O. Box 830239
Tuskegee, AL 36083
*Attorney for Plaintiff*
wem@glamgn.com

                                        /s/ Natasha L. Wilson
                                        Of Counsel