**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
EASTERN (OPELIKA) DIVISION**

| | |
|---|---|
| Donte **TONEY** | ) |
| | ) Case No.: **3:07-cv-73-MEF-WC** |
| Plaintiff | ) |
| | ) Chief District Judge Mark E. Fuller |
| **v.** | ) Magistrate Judge Wallace Capel, Jr. |
| | ) |
| **DAIMLERCHRYSLER CORP.** | ) |
| **CHIP ELLIS CARS AMERICA, INC.** | ) |
| **CHIP ELLIS, INC.** | ) ***Oral Argument Not Requested*** |
| | ) |
| Defendants | ) |

<u>**PLAINTIFF'S REPLY BRIEF
IN SUPPORT OF HIS
MOTION TO REMAND**</u>

Comes now the Plaintiff, Donte Toney, who offers this brief in reply to the response filed by

Defendant DaimlerChrysler Corporation ("DCC") (Doc.9) to Plaintiff's motion to remand this action

back to the Circuit Court of Macon County, Alabama [CV-06-244] ("State Court"). (*See* Docs.5-6)

**I.     The "Federal Officer" Removal Statute Does Not Provide this Court with
        Subject Matter Jurisdiction.**

Plaintiff's complaint states seven causes of action against DCC: (1) an AEMLD design defect

claim; (2) an AEMLD warnings claim; (3) a common law negligent design claim; (4) a common law

negligent failure to warn claim; (5) a claim for breach of the implied warranty of merchantability

(Ala. Code § 7-2-314); (6) a common law wanton design claim; and (7) a common law wanton

failure to warn claim. In its response, DCC concedes that its "federal officer" ground for removal

only applies to *one* of these claims, the wanton failure to warn claim. (Doc.9,p.2) Although DCC

criticizes Plaintiff pretty heavily for allegedly "missing the point" because his principal brief shows

the Court that there is no "federal officer" jurisdiction over *any* of Plaintiff's claims, it is DCC that

mistakenly fails to recognize that these arguments also show that there is no "federal officer"

jurisdiction over the wanton failure to warn claim.

"Federal officer" jurisdiction requires DCC to prove that: (1) that it acted as a "federal officer"; (2) that there is a "causal connection" between the conduct that DCC is sued for and its alleged official authority; and (3) that it has a "colorable federal defense."[1] DCC has not and cannot establish any of these elements.

Nowhere in DCC's brief does it discuss the first element, which requires it to prove that it acted as a "federal officer." Plaintiff's principal brief shows that the fact that a product manufacturer merely follows federal regulations does not convert it into a federal officer. Even DCC seems to have conceded this point.[2] Moreover, even if merely following federal regulations converted product manufacturers like DCC into federal officers (which it does not), DCC *could not possibly* have acted as a federal officer by following FMVSS 216 because that it **does not require** any warnings **at all**.

In addition to the grounds stated in Plaintiff's principal brief, the fact that FMVSS 216 contains no warning or labeling requirements also defeats the second element, that there be a causal connection between DCC's conduct as an alleged federal officer and the basis of the Plaintiff's tort claims. Simply put, if DCC's only authority for its alleged status as a federal officer is that it had to follow FMVSS 216, that authority could not possibly be causally connected to its wanton failure to warn Plaintiff of the design defects. Stated differently, FMVSS 216 could not have caused DCC to warn the way it did because FMVSS 216 did not require DCC to warn at all.

Finally, for the reasons stated in Plaintiff's principal brief, the third element is also not met. Not only is FMVSS 216 not a "federal defense" to Plaintiff's failure to warn claims under the

---

[1] Jefferson Cty. v. Acker, 527 U.S. 423, 431 (1999)(requiring a "colorable federal defense" to a suit for "a[n] act under color of office" and "a 'causal connection' between the charged conduct and asserted official authority"); Mesa v. California, 489 U.S. 121, 125 (1989)(recognizing the 1442(a) requirement of "'person[s] acting under' an officer of the United States or any agency thereof' sued "for act[s] under color of such office"); King v. The Provident Bank, 428 F.Supp.2d 1226, 1331 (M.D.Ala.2006)(Fuller, C.J.).

[2] *See* Doc.9, p.2 ("[n]or does DCC contend that its mere compliance with a federal regulation confers federal officer jurisdiction, as Plaintiff protests . . . ").

meaning of the "federal officer" removal statute, it is not even a valid argument under Alabama state law. While DCC criticizes Plaintiff for "fail[ing] to identify any cases addressing DCC's . . . specific and limited basis for removal" (Doc.9,p.2), it is more accurate to state that DCC has cited no cases to support its obscure argument. Indeed, the <u>Richards v. Michelin Tire Corp.</u>, 21 F.3d 1048 (11th Cir. 1994) case relied on by DCC holds exactly **opposite** from what DCC contends. DCC mistakenly states that in <u>Richards</u> the Eleventh Circuit "has recognized a defense to a claim of wantonness in manufacturer's compliance with federal regulations." (Doc.9,p.4) However, the Eleventh Circuit held precisely the **opposite**; in discussing the wanton failure to warn claims, the <u>Richards</u> Court specifically stated that "[w]e decline to accept the invitations of [defendant tire manufacturer] to hold that compliance with 49 C.F.R. § 571.119 [*i.e.* FMVSS 119] precludes a finding of wantonness."[3] Moreover, the crux of the Eleventh Circuit's holding on the wanton failure to warn claims in <u>Richards</u> was not that mere compliance with a federal standard was a defense as DCC contends; instead, it was that the plaintiff in that case merely failed to produce enough evidence of wanton behavior. While the <u>Richards</u> Court did mention that the tire manufacturer did act with "some . . .due care" by complying with FMVSS 119, this because (unlike FMVSS 216 involved in this case), FMVSS 119 mandated that some warnings and information be provided with the vehicle:

> In this case, the record demonstrates that [the tire manufacturer] complied with all requisite Federal Motor Vehicle Safety Standards, including Standard 119, which requires that "sufficient information [be placed] on the tires to permit their proper selection and use." *See* 49 C.F.R. § 571.119 (1992). [The tire manufacturer] embossed its tires with a sidewall marking indicating that the tire was a 16-inch radial tire. 49 C.F.R. § 571.119.S6.5(c). It placed information regarding tire-rim matching in the Tire and Rim Association's yearbook, § 49 C.F.R. § 571.119.S5.1, and in its own Passenger Light Truck Data Book.[4]

Here, however, DCC cannot argue, like the tire manufacturer did in <u>Richards</u>, that it, at the very

---

[3] 21 F.3d at n21.

[4] 21 F.3d at 1059.

least, gave the warnings required by federal law because federal law required no warnings.

In summary, DCC has failed to establish *any* of the three elements necessary to prove that "federal officer" jurisdiction is applicable to Plaintiff's wanton failure to warn claim. Because DCC concedes that its "federal officer" grounds for removal only apply to this claim (Doc.9,p.2), this Court has no "federal officer" removal jurisdiction in this case. Thus, the case should be remanded back to State Court.

## II.    The Federal General Removal Statute and the Diversity Jurisdiction Statute Do Not Provide this Court with Subject Matter Jurisdiction.

Plaintiff's complaint asserts AEMLD, negligence, wantonness, and implied warranty claims against the Chip Ellis Defendants. At the outset, it is very important to note that DCC's brief filed in opposition to remand does not even *attempt* to counter the part of Plaintiff's principal brief that shows that Alabama state law may arguably impose liability against the Chip Ellis Defendants on Plaintiff's breach of the implied warranty of merchantability claims. DCC's apparent concession on this claim requires that the entire case be transferred back to State Court without any further discussion of Plaintiff's other claims against the Chip Ellis Defendants.[5] However, because DCC's arguments on those claims are meritless, Plaintiff goes on to show that Plaintiff's AEMLD, negligence, and wantonness claims pass the fraudulent joinder test as well.

### A.    The AEMLD Claims.

DCC's contention that Plaintiff allegedly cannot recover against the Chip Ellis Defendants under a belief that a seller of a used vehicle cannot be held liable for design defects under the AEMLD should be rejected for several reasons. First, DCC did not make this argument in its

---

[5] *See* Faulk v. Smithkline Beecham Corp., 2005 WL 2179773 (M.D.Ala. 2005)(Fuller, C.J.)("there is a possibility that the Plaintiff can establish **at least one** of his causes of action against at least one of the resident defendants. Accordingly, this Court must find that the joinder is proper and remand the case . . . "); Fitts v. Griffin, 304 F.Supp.2d 1337, 1345-1346 (M.D.Ala.2004)(Albritton, J.)("[i]f there is a possibility a state court would find that **either** the Plaintiffs negligence or wantonness claim states a cause of action against the non-diverse defendant, then this court is required to find that joinder was proper and remand the case to state court").

removal notice; therefore, it is waived.[6] Second, DCC relies solely on non-Alabama authority for this proposition. When the controlling state substantive law is unsettled or ambiguous, the case should be remanded so the State Court (and ultimately the State Supreme Court) can resolve the issue. The Eleventh Circuit's opinion in Crowe v. Coleman, 113 F.3d 1536 (11th Cir. 1997) is controlling in this regard. In Crowe, the Court refused to make an "Erie-guess" on a controlling issue of Georgia law when there was no established Georgia Supreme Court decision on the issue. The Eleventh Circuit distinguished a federal court's responsibility for ascertaining state law in cases where its jurisdiction is **undisputed** and its responsibility where a diverse defendant has removed the case to federal court on the basis of **fraudulent joinder**:

> . . . Georgia case law may be in conflict on this issue. But, at this point in the procedural history of the case -- that is, on a motion for remand, our analysis (as well as the district court's) must be **limited** to determining whether Plaintiffs have even an **arguable** claim. So, **any** ambiguity or doubt about the substantive state law **favors remand** to state court.
>
> . . .
>
> On the face of the [conflicting] opinions, there appears to be a conflict on this issue in the Georgia appellate decisions. . . . If this case were properly before the district court (and this court) under original diversity jurisdiction, we would be obligated to predict how the Georgia Supreme Court would rule on this issue or to certify the question to the Georgia Supreme Court. For purposes of determining whether this case should be remanded to state court, however, the inquiry by federal judges **must not** go so far:
>
> > This is an Erie problem in part, but **only part**. In the usual diversity situation a Federal Court, no matter how difficult the task, must ascertain (and then apply) what the state law is. . . . But here the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. If that possibility exists, a **good faith** assertion

---

[6] *See generally* Evans-Hailey Co. v. Crane Co., 207 F.Supp. 193 (M.D.Tenn.1962)(missing allegations may not be supplied, although defective allegations in a petition for removal may be amended); Iceland Seafood Corp. v. National Consumer Co-op. Bank, 285 F.Supp.2d 719 (E.D.Va.2003)(removing party could not amend its notice of removal that was made on grounds of diversity of citizenship by supplying missing allegation outside of 30-day period after service of process, although new ground for removal was independent grant of federal jurisdiction); Britton v. Rolls Royce Engine Services, 2005 WL 1562855 (N.D.Cal. 2005)("[s]ince defendant DAI's preemption argument was first made in its May 6, 2005 Opposition brief, defendant has exceeded the 30-day period for amending its March 14, 2005 Notice of Removal").

of such an expectancy in a state court is **not** a sham . . . and is **not** fraudulent in fact or in law.

In this case, the arguable confusion in Georgia law itself supports remanding this case to state court.[7]

This analysis is equally applicable here where there is no answer, much less a clear answer, under Alabama law. DCC's offering of Treadwell Ford, Inc. v. Dairyland Ins. Co., 485 So.2d 312 (Ala. 1986) in support of its proposed rule is without merit. Indeed, DCC itself *concedes* that the Alabama Supreme Court in Treadwell "explicitly declined to address the seller's argument that the AEMLD did not apply to sellers of used vehicles" because the seller had not preserved the AEMLD argument for appeal." (Doc.9,p.10,n.3) Plaintiff further notes that, if anything, Treadwell can only be cited for the proposition that the AEMLD does not apply when an insurance company sells a "used, wrecked vehicle **for salvage**." The statement quoted by DCC as purportedly controlling this case (*i.e.* that the sale was "too far afield of the sellers in the chain of marketing a new product to be reached by the [AEMLD]")[8] was made in reference to a sale by an insurance company to a junkyard for salvage.[9] As such, Treadwell certainly does not represent "clearly established" Alabama law on this issue in this case -- a case which concerns a sale of a used vehicle for use on the highway by a corporation in the business of selling automobiles to consumers. In fraudulent joinder cases, "doubtful issues of law due to absence of definite pronouncements by the state supreme court are to be tried in the court having original jurisdiction of the case and are **not** to be determined in a removal proceeding."[10]

DCC's next contention, that the Chip Ellis allegedly have no AEMLD liability to Plaintiff

---

[7] 113 F.3d at 1540 (*quoting* Bobby Jones Garden Apartments v. Suleski, 391 F.2d 172, 176-77 (5th Cir. 1968)(citations omitted); *and citing* Parks v. New York Times Co., 308 F.2d 474, 477 (5th Cir. 1962)).

[8] (*See* Doc.9,p.10).

[9] *See* 485 So.2d at 318 ("[the insurance company] had nothing to do with the repair work, nor did [the insurance company] sell or attempt to sell other than to a junkyard for salvage").

[10] Crowe, 113 F.3d at 1540 (*quoting* Parks, 308 F.2d at 477); *see also* Kimbrough v. Dial, 2006 WL 3627102, *3, *5 (S.D.Ala.2006)(Steele, J.)(finding no fraudulent joinder and remanding case where there was an absence of any Alabama case expressly rejecting the notion of an Alabama state law duty to maintain the premises running from a store manager to a customer and an absence of cases suggesting that such a duty may exist).

because they are allegedly entitled to the no-causal-relation affirmative defense, has already been extensively countered and refuted by Plaintiff in his principal brief. Only two arguments made by DCC in its response brief were not addressed by Plaintiff in his principal brief. Neither require a finding of fraudulent joinder.

In support of its contention that Plaintiff is required at this early stage to submit evidence that refutes one or more of the elements of the no-causal-relation defense, DCC urges the Court to follow the opinions of Judge Myron Thompson, which state that "to block a fraudulent-joinder charge based on lack of evidence, a plaintiff who has not been able to engage in full discovery must be able to provide some showing that her claim against the resident defendant has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery."[11] There are four reasons why DCC's argument is not well-taken.

<u>First</u>, Judge Thompson's standard was based on nothing more than F.R.C.P. 11; in both cases, he states:

> The question then is how should the court assess factual allegations for fraudulent joinder when there has not been a full opportunity for discovery. "The court need not look far for an appropriate threshold standard. A party submitting a pleading must meet, at least, the requirements of Rule 11 of the Federal Rules of Civil Procedure." "The court need not look far for an appropriate threshold standard. A party submitting a pleading must meet, at least, the requirements of Rule 11 of the Federal Rules of Civil Procedure."

In both cited cases, this standard was applied: (1) to issues upon which the plaintiff had the ultimate burden of proof at trial and (2) to facts which were partly in control of the plaintiff.[12] Judge Thompson's rule fits nicely and is sound in these types of cases because the plaintiff in these cases

---

[11] *See* <u>Sellers v. Foremost Insurance Company</u>, 924 F. Supp. 1116, 1118-119 (M.D.Ala. 1996); <u>Wright v. Metropolitan Life Ins. Co.</u>, 74 F. Supp.2d 1150, 1153-1154 (N.D.Ala. 1999).

[12] *See* <u>Wright</u>, *supra* (at issue was plaintiff's fraud claim, and specifically at what time the plaintiff reasonably discover the fraud); <u>Sellers</u>, *supra* (at issue was plaintiff's fraud claim, and specifically the elements of a *prima facie* case of fraud); *and see* <u>Parsons Steel, Inc. v. Beasley</u>, 522 So.2d 253 (Ala. 1988)(plaintiff in fraud action has burden of proving a *prima facie* case of fraud **and** by pleading and proving circumstances permitting tolling of the running of the limitations period, such as fraud on the part of the defendant in concealing the wrongdoing).

must allege facts in his complaint that address these issues. Pleading these types of facts are not an onerous burden on a plaintiff because he personally experienced the facts giving rise to the tort. Similarly, in this case, the instant Plaintiff had no problem alleging facts that support each and element of his seven product liability claims. Further, if pressed, Plaintiff would have had no problem showing that these elements are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. However, in this case DCC **does not** allege that Plaintiff cannot establish a *prima facie* case; to the contrary, it alleges that Plaintiff cannot counter an *affirmative defense* of the Chip Ellis Defendants (which has not even been asserted). Simply put, application of Judge Thompson's rule does not make sense in cases like the one at bar because the Plaintiff (1) is **not required** to plead facts that refute an affirmative defense in his complaint and (2) does **not** have the burden of proof at trial on affirmative defenses. To the contrary, it is the Chip Ellis Defendants that is required to plead its affirmative defenses, not the Plaintiff, and it is the Chip Ellis Defendants that have the ultimate burden of proof at trial on its affirmative defenses, including the no-causal-relation defense. Moreover, contrary to the situation in Judge Thompson's cases, **all** of the evidence pertaining to the key element of the no-causal-relation affirmative defense at issue in this case is solely in the possession of the Chip Ellis Defendants. Seller liability nearly always turns on the evidence supporting and dispelling the fourth element of the defense -- whether the defendant had "knowledge of the defective condition [or] an opportunity to inspect the product that was superior to the knowledge or to the opportunity of the consumer."[13] Plaintiff could not possibly address this element without discovery. As such, instead of following Judge Thompson's cases, this Court should follow the cases cited by plaintiff in his principal brief: Fitts v. Griffin, 304 F.Supp.2d 1337 (M.D.Ala.2004)(Albritton, J.); Pritchard v. Hancock Fabrics. Inc., 198 F.Supp.2d 1288, 1290

---

[13] Caudle v. Patridge, 566 So.2d 244, 248 (Ala. 1990).

(N.D.Ala.2002)(Buttram, J.); and <u>Rivers v. Int'l Matex Tank Terminal</u>, 864 F.Supp. 556 (E.D.La.1994). All of these cases dealt with the situation at bar -- where the Plaintiff could not possibly produce evidence without discovery.

     <u>Second</u>, even if this Court were to apply Judge Thompson's standard, contrary to DCC's suggestion, Plaintiff has certainly met its low hurdle. Like Plaintiff's cited cases, Judge Thompson's standard also takes into consideration the fact that a plaintiff "should not be unjustly cut off at this early stage from pursuit of possibly valid claims."[14] The undersigned submits that he has been litigating civil automotive product liability claims for twenty years, both on behalf of injured persons and automobile manufacturers. In virtually every case, the immediate seller always asserts the no causal relation defense. However, it is the undersigned's experience that many businesses selling automobiles to the public like the Chip Ellis Defendants undertake extensive inspections of their vehicles, both before they are purchased and before they are sold. It is important to note that the affidavit submitted by Levin H. Ellis, IV, does not state, one way or the other, whether the Chip Ellis Defendants inspected the Subject Vehicle for defects or whether they had ever been sued on the defect theories at issue in this case. More important, sellers similar to the Chip Ellis Defendants very often know the nuances of the vehicles they sell, and they often have great awareness of many design defects of many makes and models. This awareness comes from various databases and communications not available to the normal consumer. These businesses know, for example, which models have routine engine problems, which ones tend to have structural problems, which ones are prone to steering problems, which ones burn too much oil, and which ones have been subject to product recalls by their manufacturers. In sum, they very often have a great deal of knowledge about the design defects in vehicles, but rarely, if ever pass this information on to the consumer before they

---

[14] <u>Wright</u>, *supra*; *see also* <u>Clay v. Brown & Williamson Tobacco Corp.</u>, 77 F. Supp.2d 1220 (M.D.Ala. 1999)(following this test)(DeMent, J.)

are purchased. Whether the Chip Ellis Defendants fall into this category or not cannot be stated without an opportunity for discovery. However, it can most certainly can be stated that the Chip Ellis Defendants had much more of an opportunity to inspect and know of the defects of the Subject Vehicle when compared to the instant Plaintiff, who did not purchase the Subject Vehicle and did not own it. The undersigned submits that the foregoing is a sufficient showing to meet any Rule 11 analysis. Simply put, "[b]y presenting to the court [the above statements in this brief, the undersigned] is certifying that to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . . the claims, defenses, and other legal contentions [herein] are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." *See also* F.R.C.P. 11, Advisory Committee Notes ("The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories").

Third, regardless of what test this Court follows, DCC has not met its burden of establishing fraudulent joinder by clear and convincing evidence.[15] Its position that the Plaintiff allegedly can never defeat the Chip Ellis Defendants' no-causal-relation affirmative defense is based on nothing more than the very conclusory affidavit of an officer of the Chip Ellis Defendants; a gentleman has not been subjected to cross-examination by the Plaintiff. Although the fraudulent joinder inquiry is much more generous to the plaintiff than summary judgment procedure,[16] it is important to note that the Eleventh Circuit "has consistently held that conclusory allegations without specific supporting facts have no probative value" and cannot even defeat a well-supported motion for summary

---

[15] *See* Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962)(fraudulent joinder must be proven by clear and convincing evidence).

[16] *See* Crowe, *supra*.

judgment.[17] Ellis's affidavit proffered by DCC does little more than track the elements of the no-causal-relation defense. Therefore, it should be excluded by the Court. This Court should also be suspicious about the willingness of Mr. Ellis to give affidavit testimony to co-defendant DCC while, at the same time, his companies have avoided service in this lawsuit.[18]

Fourth, this Court should reject DCC's suggestion to "defer ruling [on the motion to remand] and impose a 60 day discovery period to conduct limited discovery" on the no-causal-relation defense. (Doc.9,pp.15-16,n4) The Eleventh Circuit has **not** held that doubts about jurisdiction should resolved after a federally-mandated discovery period. To the contrary, it has held that "all doubts about jurisdiction should be resolved in favor of **remand** to state court."[19] This is because when subject matter jurisdiction is deemed lacking,"the court's sole remaining act is to dismiss the case for lack of jurisdiction."[20] "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue."[21] If this Court were to allow discovery, it would effectively be undertaking to resolve the *merits* of Plaintiff's claims against the Chip Ellis Defendants. Such an undertaking would be contrary to the Eleventh Circuit's clear admonition in Crowe -- that district courts should: (1) "exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them" and (2) "stop short of adjudicating the merits of cases that do not appear readily to be frivolous or fraudulent."[22] DCC has

---

[17] Evers v. General Motors, 770 F.2d 984, 986 (11th Cir.1994); *see also* Hart v. Glaxosmithkline, PLC, 2006 WL 2355465, n1 (M.D.Ala. 2006)(Fuller, C.J.)("[t]he requirements of Rule 56 make it plain that affidavits or depositions which set forth conclusory arguments rather than statements of fact based on personal knowledge are improper").

[18] Service was initially attempted on the Chip Ellis Defendants with the registered agents for service that were designated with the Alabama Secretary of State. Service was refused at these locations, which means that the Chip Ellis Defendants failed to apprize the Secretary of State of their current registered agent as required by the Alabama corporations statutes.

[19] Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999).

[20] Morrison v. Allstate Indemnity Co., 228 F.3d 1255, 1261 (11th Cir.2000); *see also* University of South Alabama v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir.1999)("the district court should have resolved the issue of subject matter jurisdiction before reaching the merits of any other issue" because to reach merits of pending motion in removed case where jurisdiction may be lacking would deprive state court of its right to resolve controversies in its own courts).

[21] Morrison, 228 F.3d at n22.

[22] Crowe, 113 F.3d at 1541-1542 (citations omitted).

cited no authority supporting its request for discovery, and Plaintiff has only found authority to the contrary. In <u>McKinnes v. American International Group, Inc.</u>, 420 F.Supp.2d 1254, 1260 (M.D.Ala. 2006), Judge Thompson in a substantially similar situation denied such a request "[b]ecause this discovery would essentially go the merits of the entire case rather than to fraudulent joinder." The <u>McKinnes</u> decision is persuasive here.

Furthermore, allowing a discovery period will take away the plaintiff's only "check and balance" on the removal/remand system -- a swift decision on a motion to remand by the federal district court if jurisdiction is not proper (along with the possible assessment of costs and fees). Removal decisions are designed to be unappealable because an appeal would unduly delay a plaintiff's right to pursue her case.[23] Allowing discovery in cases removed to federal court on the basis of alleged fraudulent joinder would effectively turn the fraudulent joinder analysis into a summary judgment analysis, which is contrary to the direction of the Eleventh Circuit. It also unjustly deprives plaintiffs of their right to a state court forum. The Eleventh Circuit's <u>Crowe</u> opinion frowns on both of these results. In <u>Crowe</u>, the Court held:

> Over and over again, we stress that "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits." When considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law. "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court."[24]

Simply put, imposing a discovery period is exactly the type of "safari" that the <u>Crowe</u> Court forbade. It went-on to hold that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final

---

[23] *See* 28 U.S.C. § 1447(e)("[a]n order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise . . . ").

[24] 113 F.3d at 1358 (citations omitted).

determination."[25] To do otherwise, the Eleventh Circuit holds, "is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated." *Id.*

Finally, DCC's reliance on Consolidated Pipe & Supply Co. v. Stockham Valve & Fitting, 365 So.2d 968 (Ala. 1978) for the proposition that "when an alleged defect in a product is a latent defect . . . the 'causal relation' defense shields the innocent retailer from all liability" (Doc.9,p.12) is misplaced. Without citing any evidence, DCC surmises that the defects at issue in this case, inadequate roof strength and unstable steering propensity, are probably latent. This argument should be rejected for the same reasons as stated above. Whether or not the defects at issue are latent or patent depends on both the actual knowledge of the Chip Ellis Defendants and/or the extent of any inspection. The Plaintiff is entitled to conduct discovery on this issue; therefore, it cannot be said that Plaintiff has no possibility of proving his AEMLD claim. There are two additional reasons that DCC's Consolidated Pipe argument should be rejected. First, this Court itself has held in a similar situation that "it is often up to the jury to make the distinction between latent and patent defects in a product."[26] Indeed, it should be noted that contrary to DCC's implication, the defense was not decided as a matter of law in the Consolidated Pipe case; instead, it was submitted to the jury for decision. All in all, because the jury must make this call, it can hardly be argued that Plaintiff has no possibility of convincing the jury that the Chip Ellis Defendants had a greater opportunity to discover the defects than the Plaintiff did. Second, and more important, since **DCC itself** has not produced *any evidence* in support of its contention, it clearly has not met its burden of proving fraudulent joinder by **clear and convincing** evidence.

For all of these reasons, DCC has not proven by clear and convincing evidence that Plaintiff has no possibility of recovering on his AEMLD claims against the Chip Ellis Defendants.

---

[25] *Id.* (*quoting* Parks v. The New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962)).
[26] Johnson v. Bridgestone Firestone North American Tire LLC, 2006 WL 2480030, *2 (M.D.Ala. 2006)(Fuller, C.J.).

**B.    The Negligence and Wantonness Claims.**

The only contention DCC makes in support of its argument that there is allegedly no arguable basis for the State Court to find the Chip Ellis Defendants liable for common law negligence and wantonness is the fact that there is no contractual privity between the Chip Ellis Defendants and Plaintiff. This argument was soundly refuted by the Alabama appellate court cases cited by Plaintiff in his principal brief. Because DCC has not even attempted to counter Plaintiff's authority, it clearly has not met its burden of establishing fraudulent joinder.

**C.    The Implied Warranty of Merchantability Claims.**

As discussed above, because DCC does not even attempt to counter Plaintiff's claims against the Chip Ellis Defendants for the breach of the implied warranty of merchantability, this concession alone requires remand.[27]

**D.    DCC's Arbitration Arguments Are Without Merit.**

Because DCC has also failed to address the arbitration arguments it raised in its removal petition in support of its fraudulent joinder argument, this Court should assume that DCC has abandoned these arguments as well.

<u>Conclusion</u>

Because both DCC's "federal officer" and "fraudulent joinder" grounds for removal are not proper, the case should be remanded back to State Court.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully requests this Honorable Court to remand this action back to the State Court.

Respectfully submitted,

 /s/ Thomas P. Willingham
Thomas P. Willingham (WIL156)

---

[27] *See* <u>Faulk</u>, *supra*; <u>Fitts</u>, *supra*.

Attorney for Plaintiff Donte Toney

*OF COUNSEL:*
ALVIS & WILLINGHAM, L.L.P.
1400 Urban Center Drive; Suite 475
Birmingham, Alabama 35242
Phone: (205)298-1011
Fax: (205)298-1012
twillingham@alvisandwillingham.com

*ALSO REPRESENTING PLAINTIFF*:
Walter E. McGowan, Esq. (MC016)
GRAY, LANGFORD, SAPP,
MCGOWAN, GRAY & NATHANSON
Post Office Box 830239
Tuskegee, Alabama 36083
Phone: (334)727-4830
Fax: (334)727-5877
wem@glamgn.com

### Certificate of Service

I hereby certify that on this the 23rd day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to: Joel Chandler Bailey, II, Esq. (cbailey@lfwlaw.com); Michael Lester Bell, Esq. (mbell@lfwlaw.com); and Natasha Lynke Wilson, Esq. (nwilson@lfwlaw.com)

/s/ Thomas P. Willingham
**OF COUNSEL**

15