IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
EASTERN (OPELIKA) DIVISION

| | |
|---|---|
| Donte **TONEY** ) | |
| ) | Case No.: **3:07-cv-73-MEF-WC** |
| Plaintiff ) | |
| ) | Chief District Judge Mark E. Fuller |
| v. ) | Magistrate Judge Wallace Capel, Jr. |
| ) | |
| **DAIMLERCHRYSLER CORP.** ) | |
| **CHIP ELLIS CARS AMERICA, INC.** ) | |
| **CHIP ELLIS, INC.** ) | **\*\*Oral Argument Not Requested\*\*** |
| ) | |
| Defendants ) | |

### PLAINTIFF'S SUPPLEMENTAL BRIEF
### IN SUPPORT OF HIS
### MOTION TO REMAND

Comes now the Plaintiff, Donte Toney, who offers this supplemental brief in support of his motion to remand this action back to the Circuit Court of Macon County, Alabama [CV-06-244] ("State Court") and in compliance with this Court's June 19, 2007 order. (*See* Doc.13)

DaimlerChrysler Corporation ("DCC") argued in support of its motion to remand that this Court allegedly has federal removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), the "federal officer removal" statute. DCC's base argument was that is allegedly was a "federal officer" merely because it was required to follow 49 C.F.R. § 571.216 ("FMVSS 216"), an administrative regulation promulgated by the National Highway Traffic and Safety Administration ("NHTSA") pursuant to the Federal Motor Vehicle Safety Act, 49 U.S.C. §§ 30101-30169 ("FMVSA") that states the federal minimum roof crush standard. In his brief supporting remand, the Plaintiff produced substantial authority that a private manufacturer does not establish federal officer jurisdiction merely by showing participation in a regulated industry. See King v. The Provident Bank, 428 F.Supp.2d 1226, 1231-1232 (M.D.Ala.2006)(Fuller, C.J.).; Alabama Dental Ass'n v. Blue Cross and Blue Shield of Ala.,

1

Inc., 2007 WL 25488, *7 (M.D.Ala. Jan. 3, 2007)(Fuller, C.J.)(*quoting* Kennedy v. Health Options, Inc., 329 F.Supp.2d 1314, 1318 (S.D.Fla.2004)); City of Livingston v. Dow Chem. Co., 2005 WL 2463916, at *3 (N.D.Cal. Oct.5, 2005); *In re* Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig., 342 F.Supp.2d 147, 156 (S.D.N.Y.2004); Virden v. Altria Group, Inc., 304 F.Supp.2d 832, 844-845 (N.D.W.Va.2004); Tremblay v. Philip Morris, Inc., 231 F.Supp.2d 411, 418-419 (D.N.H.2002); Guillory v. Ree's Contract Serv., Inc., 872 F.Supp. 344, 347-348 (S.D.Miss.1994). The Plaintiff also produced substantial authority that manufacturers like DCC that merely manufacture products for the general public and, in so doing, follow some general minimum federal regulations before placing those products on the market, do not establish "federal officer" removal. *See* Stanley v. Wyeth Inc., 2006 WL 2588147 (E.D.La. 2006); Jamison v. Purdue Pharma Co., 251 F.Supp.2d 1315, 1327 (S.D.Miss.2003); Guckin v. Nagle, 259 F.Supp.2d 406 (E.D.Pa. 2003); Alsup v. 3-Day Blinds, Inc., 435 F.Supp.2d 838, 845 (S.D.Ill.2006); *In re* Guidant Corp. Implantable Defibrillators Prod. Liab. Litig., 428 F.Supp.2d 1014 (D.Minn.2006); Little v. Purdue Pharma, L.P., 227 F.Supp.2d 838 (S.D.Ohio 2002); Tremblay v. Philip Morris, Inc., 231 F.Supp.2d 411, 418-419 (D.N.H.2002).

On June 11, 2007, the United States Supreme Court firmly shut-the-door on DCC's argument in Watson v. Philip Morris Companies, __ U.S. __, Case No. 05-1284 (2007). In that case, the plaintiffs filed a state-court suit claiming that Philip Morris violated Arkansas unfair business practice laws by advertising certain cigarette brands as "light" when, in fact, Philip Morris had manipulated testing results to register lower levels of tar and nicotine in the advertised cigarettes than would be delivered to consumers. Like DCC in the instant case, Philip Morris removed the case to Federal District Court under the federal officer removal statute. The district court and the Eighth Circuit Court of appeals upheld the removal, ruling that because the complaint attacked Philip

Morris' use of the Government's method of testing cigarettes that the plaintiffs had sued Philip Morris for "acting under" the Federal Trade Commission ("FTC"), and that the FTC's detailed supervision of the cigarette testing process was akin to lower court decisions that permitted removal by heavily supervised government contractors. A unanimous Supreme Court, however, reversed, holding that simply because a federal agency directs, supervises, and monitors a manufacturer's activities in producing products for the general public in considerable detail, that does not bring the company within the scope of the federal officer removal statute:

> [T]he help or assistance necessary to bring a private person within the scope of the statute does not include simply complying with the law. We recognize that sometimes an English speaker might say that one who complies with the law "helps" or "assists" governmental law enforcement. Taxpayers who fill out complex federal tax forms, airline passengers who obey federal regulations prohibiting smoking, for that matter well-behaved federal prisoners, all "help" or "assist" federal law enforcement authorities in some sense of those words. But that is not the sense of "help" or "assist" that can bring a private action within the scope of this statute. That is in part a matter of language. One would usually describe the behavior of the taxpayers, airline passengers, and prisoners we have described as compliance with the law (or acquiescence to an order), not as "acting under" a federal official who is giving an order or enforcing the law. It is also in part a matter of the history and the precedent we have discussed.
>
> Finally, it is a matter of statutory purpose. When a company subject to a regulatory order (even a highly complex order) complies with the order, it does not ordinarily create a significant risk of state-court "prejudice." Nor is a state-court lawsuit brought against such a company likely to disable federal officials from taking necessary action designed to enforce federal law. Nor is such a lawsuit likely to deny a federal forum to an individual entitled to assert a federal claim of immunity.
>
> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.

(citations omitted). The Court rejected Phillip Morris' attempt to reply on lower federal cases where

government contractors have fallen under the federal officer statute. In so doing, the Court made the same distinction between government contractor cases and mere regulated manufacturers that the instant Plaintiff made in his principal remand brief:

> [T]he private contractor in such cases is helping the Government to produce an item that it needs. The assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks. In the context of Winters, for example, Dow Chemical fulfilled the terms of a contractual agreement by providing the Government with a product that it used to help conduct a war. Moreover, at least arguably, Dow performed a job that, in the absence of a contract with a private firm, the Government itself would have had to perform.

(citations omitted) The Court also rejected another argument similar to the argument that DCC makes in the instant case. Phillip Morris argued that its activities did not consist simply of compliance with regulatory laws, rules, and orders; instead, it argued, that the FTC, after initially testing cigarettes for tar and nicotine, "delegated authority" for that task to an industry-financed testing laboratory in 1987, and that it was acting pursuant to that "delegation." However, the Court found that there was no evidence of any "delegation," stating:

> Without evidence of some such special relationship, Philip Morris' analogy to Government contracting breaks down. We are left with the FTC's detailed rules about advertising, specifications for testing, requirements about reporting results, and the like. This sounds to us like regulation, not delegation. If there is a difference between this kind of regulation and, say, that of Food and Drug Administration regulation of prescription drug marketing and advertising (which also involve testing requirements), that difference is one of degree, not kind.
>
> As we have pointed out, however, differences in the degree of regulatory detail or supervision cannot by themselves transform Philip Morris' regulatory compliance into the kind of assistance that might bring the FTC within the scope of the statutory phrase "acting under" a federal "officer." And, though we find considerable regulatory detail and supervision, we can find nothing that warrants treating the FTC/Philip Morris relationship as distinct from the usual regulator/regulated relationship. This relationship, as we have explained, cannot be construed as bringing Philip Morris within the terms of the statute.

(citations omitted).

4

Here, the relationship between NHTSA and DCC is even more tenuous than the relationship between the FTC and Philip Morris. Here, there is absolutely no evidence of any supervisory oversight of DCC, much less any evidence of any "delegation" of NHTSA's authority to DCC. Moreover, NHTSA did not contract with DCC to build the subject vehicle, nor did it dictate its design. To the contrary, the only nexus between NHTSA and DCC is that DCC was required -- as are all automotive manufacturers -- to comply with federally mandated minimum roof strength standards. As such, this too is regulation, and not delegation. Therefore, the federal officer removal statute is likewise not applicable in this case.

**WHEREFORE, PREMISES CONSIDERED**, the Plaintiff respectfully requests this Honorable Court to remand this action back to the State Court.

                Respectfully submitted,

                /s/ Thomas P. Willingham
                Thomas P. Willingham (WIL156)
                Attorney for Plaintiff Donte Toney

*OF COUNSEL:*
ALVIS & WILLINGHAM, L.L.P.
1400 Urban Center Drive; Suite 475
Birmingham, Alabama 35242
Phone: (205)298-1011
Fax: (205)298-1012
twillingham@alvisandwillingham.com

*ALSO REPRESENTING PLAINTIFF*:
Walter E. McGowan, Esq. (MC016)
GRAY, LANGFORD, SAPP,
MCGOWAN, GRAY & NATHANSON
Post Office Box 830239
Tuskegee, Alabama 36083
Phone: (334)727-4830
Fax: (334)727-5877
wem@glamgn.com

**Certificate of Service**

I hereby certify that on this the 25th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

5

to: Joel Chandler Bailey, II, Esq. (cbailey@lfwlaw.com); Michael Lester Bell, Esq. (mbell@lfwlaw.com); and Natasha Lynke Wilson, Esq. (nwilson@lfwlaw.com)

        /s/ Thomas P. Willingham
        ***OF COUNSEL***